Harry L. Strohm v. The People of the State of Illinois.

1. CRIMINAL LAW—*Selling Prohibited Publications—Sufficiency of Indictment.*—Under the first section of the act of June 30, 1889, to suppress selling, lending, giving away or showing to any minor child any paper or publication principally devoted to illustrating or describing immoral deeds, an indictment which alleges that the defendant " did unlawfully sell, give away and show, and did unlawfully have in his possession, with intent to give away and show to one Burt Damon, who was then and there a minor child, a certain newspaper known as the Sunday Sun, a certain publication purporting to be published in the city of Chi-

cago and State of Illinois, which said newspaper was then and there devoted to the publication and principally made up of criminal news, police reports, and accounts of criminal deeds and stories of deeds of bloodshed, lust and crime, contrary," etc., is sufficient.

2. SAME—*Sufficiency of the Indictment Under Section Three of the Act.* —Under the third section of the act aforesaid, providing that it shall be unlawful to hire, use or employ any minor child to sell or give away, or in any manner to distribute any book, pamphlet, magazine, newspaper, story paper or publication coming within the description of matters mentioned in the first section of the act, an indictment which charges that the defendant did unlawfully and knowingly hire, use and employ one Burt Damon, who was then and there a minor child, to sell, advertise and distribute a certain newspaper, known as the "Sunday Sun," a certain publication purporting to be published in the city of Chicago and State of Illinois, which said newspaper was then and there devoted to the publication and principally made up of criminal news, police reports and accounts of criminal deeds, contrary, etc., is sufficient.

3. CRIMINAL PLEADING—*Publications Describing Immoral Deeds.*— The rule of criminal pleading making it necessary to set out obscene matter in an indictment, unless it is in the hands of the defendant, out of the power of the prosecution, or is too gross to be spread upon the records of the court, either of which facts, if existing, should be averred in the indictment as an excuse for failing to set it out, when applied to indictments under the act of June 30, 1889, entitled "An act to suppress selling, lending, giving away or showing to any minor child any paper or publication principally devoted to illustrating or describing immoral deeds," must admit of a further exception where the quantity of the matter to be shown makes such incorporation impracticable; but such additional exception will not excuse the failure to incorporate enough of the publication to enable the defendant to understand with reasonable certainty what particular publication is intended, and to prepare his defense.

4. SAME—*Sufficient Description of Prohibited Publications.*—In an indictment under the act to suppress selling, lending, giving away or showing to any child any paper or publication principally devoted to illustrating or describing immoral deeds for the purpose of identifying the paper or publication intended, it is sufficient to state its proper name, its place of publication, its business or the occupation to which it is devoted, its character, that of which it is principally made up, and the particular use to which it was put with reference to the minor in question.

5. PRACTICE—*In Criminal Cases—Reading Opinions to the Jury.*— The reading of a judicial opinion from a newspaper to the jury in a criminal case is improper, but unless there is something in the opinion prejudicial to the defendant it is not reversible error.

6. CONSTRUCTION OF STATUTES—*Suppression of Publications Illustrating Criminal Deeds.*—The act of June 30, 1889, to suppress selling, lending, giving away or showing to any minor child any paper or publication

principally devoted to illustrating or describing criminal deeds, by a proper construction embraces pictures of such deeds with or without stories, and stories of such deeds with or without pictures.

**Indictment.**—Selling, etc., to a minor child, papers devoted to illustrating and describing criminal deeds. Error to the Circuit Court of Macon County; the Hon. EDWARD P. VAIL, Judge, presiding. Heard in this court at the November term, 1894. Affirmed. Opinion filed June 3, 1895.

PALMER, SHUTT, DRENNAN & LESTER, attorneys for plaintiff in error.

I. R. MILLS, State's Attorney, for defendants in error.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

Plaintiff in error was convicted on the first and fifth counts of an indictment under the act of June 30, 1889, entitled "An act to suppress selling, lending, giving away or showing to any minor child any paper or publication principally devoted to illustrating or describing immoral deeds." (3 S. & C. Stat., p. 364.)

The first section, upon which the first count was framed, enacts: "That it shall be unlawful for any person to sell, lend, give away or show, or have in his possession with intent to sell or give away, or to show or advertise or otherwise offer for loan, gift or distribution to any minor child, any book, pamphlet, magazine, newspaper, story paper or other printed paper devoted to the publication or principally made up of criminal news, police reports or accounts of criminal deeds, or pictures and stories of deeds of bloodshed, lust or crime."

Section 3, on which the fifth count was framed, declares: "It shall be unlawful to hire, use or employ any minor child to sell or give away or in any manner to distribute * * * any book, pamphlet, magazine, newspaper, story paper or publication coming within the description of matters mentioned in the first section," and prescribes the penalty for the violation of any of its provisions.

The first count charges that the defendant, on the 16th day of November, 1892, at, etc., " did unlawfully sell, give away and show, and did unlawfully have in his possession with intent to sell, give away and show to one Burt Damon, who was then and there a minor child, a certain newspaper known as the " Sunday Sun," a certain publication purporting to be published in the city of Chicago and State of Illinois, which said newspaper was then and there devoted to the publication and principally made up of criminal news, police reports, and accounts of criminal deeds and stories of bloodshed, lust and crime, contrary to the form of the statute," etc.

The fifth count charges that on the 19th of December, 1891, at, etc., he " did unlawfully and knowingly hire, use and employ one Burt Damon, who was then and there a minor child, to sell and distribute a certain newspaper," etc., (as in the first count down to and including the words " criminal deeds").

For the reversal of the judgment it is argued, first, that the court should have sustained the motion to quash these counts.

The objection made to them is that " they did not set out the supposed obscene matter," nor any excuse for their failure to do so; citing McNair v. The People, 89 Ill. 441, and U. S. v. Harmon, 34 Fed. Rep. 872.

In the Illinois case the indictment was in three counts under section 223 of the criminal code, which is aimed at the preparation, possession or circulation of " any obscene or indecent " book, pamphlet, paper, picture, model or cast, or " any instrument or article of indecent or immoral use." Each of the counts related to a pamphlet. The first described it simply as " a certain obscene and indecent pamphlet," the second as " a certain obscene and indecent pamphlet purporting to be evidence taken before a committee appointed by the Fox River Valley Medical Association in the matter of charges against O. L. Patton, preferred by Dr. McNair," and the third as " a certain obscene and indecent pamphlet." Neither presented any means other than the

descriptions above stated, by which the pamphlet referred to could be identified. The only quality or characteristic on account of which its preparation, possession or circulation was inhibited, was obscenity or indecency. This quality could have been shown by setting out any portion of it—a single paragraph or sentence—that was obscene or indecent. The court held that whether it was within the meaning of the statute was a question for the court, and since it was so easily practicable to do it, the indictment should have set forth enough of the matter to enable the court to determine it, or stated a sufficient reason for the omission; and further, should have identified the pamphlet referred to with sufficient certainty to enable the accused to prepare his defense, if any he had, and to plead the acquittal or conviction in bar of another prosecution for the same offense.

In the Federal case cited the indictment was under a statute which prohibited the mailing of "obscene matter," and charged that defendants deposited in the United States post-office at Valley Falls, in the district, addressed to divers parties named, for mailing and delivery to them, a certain obscene paper called "Lucifer," too indecent to be set out. The "paper and publication" intended, was no further identified than by its mere title. As in the Illinois case, the question of the character of the paper was solely whether it was "obscene," which could have been as readily shown here as there by a brief quotation. Upon demurrer, the indictment was held insufficient for the same reasons that controlled in that. The court said: "It is not sufficient for the grand jury to allege that the contents of the paper are too obscene to be spread upon the records, and omit every means of identification. Surely the objectionable matter can be described or identified in some way, without giving offense to the court, or defiling its records with scandalous and indecent matter. The date of the paper, the title of the article, or its general tenor and purport, couched in decent language, would serve to make the charge definite and certain."

The rule announced in McNair v. The People, *supra*, de-

clares it " necessary to set out the supposed obscene matter
in the indictment," unless it is in the hands of the defendant
or out of the power of the prosecution, or is too gross to be
spread upon the records of the court; either of which facts,
if existing, should be averred in the indictment as an excuse
for failing to set out the obscene matter."

While the soundness of this rule, as applied to an indict-
ment under the statute there in question, can not be doubted,
we apprehend that as to those upon the one here considered
it must admit of a further exception, namely, where the quan-
tity of the matter to be shown makes such incorporation
impracticable. It is here averred in each of the counts to
be a " newspaper." The statute does not make the alleged
use of it unlawful by reason of the quality or character of
any part of it less than the principal part, but only for the
reason that it is " devoted to the publication, and principally
made up of " matter of one or more of several certain and
specified kinds. That it is so devoted and made up can not
be shown except by showing all the other parts—the entire
paper. A newspaper is a publication of a form and size
commonly and well understood. Each of the two numbers
introduced in evidence in this case contained eight pages, of
the ordinary newspaper size, and being different, would make
sixteen required to be set out in the indictment—of which
the accused would be entitled to a full copy upon his re-
quest, and the clerk might be ordered by the court to copy
it at length upon the records. How much might have to be
read on arraignment? What time consumed in comparison
of the matter set out and that offered in evidence, and in
discussion of questions of alleged variance? More might
be, but we think quite enough has been suggested to show
that the rule applied in such a case would be unnecessary,
unreasonable and impracticable. The additional exception
should, therefore, be allowed.

But though the quantity of the matter should excuse the
failure to incorporate it at length in the indictment, we
agree with the court in the Harmon case, *supra*, that it
should not excuse the omission of " every means of its iden-

tification." It should contain enough to enable the defendant to understand with reasonable certainty what particular paper or publication was intended, and the court to see that he should so understand, and therefore be able to contend or show, if the fact was that he did not make of the paper described the unlawful use charged—in other words to prepare his defense, if any he had. Absolutely certain identification can hardly be made by any means other than the setting out of a full, true and perfect copy, or presenting the original matter, as part of the indictment. In the case last referred to the court said, as already above quoted, that " the date of the paper, the title of the article, or its general tenor and purport, couched in decent language, would serve to make the charge definite and certain;" and yet it is clear that either of these, or all together, might be alike truly descriptive of entirely different papers or articles. But if the publication as described and the use charged to have been made of it were criminal, we do not understand that the court, upon demurrer or motion to quash, would presume that there was another such paper, or that the defendant had been, or even may have been guilty in like manner in connection with another publication of a like character and as well identified by the same means. It is therefore difficult to appreciate rightly the bearing of that decision upon the question before us, and to understand the seeming implication from a previous quotation, that the indictment omitted " every means " of identifying the publication there in question. For the court said it " was not described or identified in any manner except by its title ' Lucifer,' " and that " it appears" (though upon demurrer to the indictment) " to have been a newspaper published at stated periods at Valley Falls. The date of the particular issue is not set out, nor is the article or articles complained of identified by title or contents. There had been a great many numbers of the paper issued entitled ' Lucifer,' and probably mailed to these same parties, and each and every one different from the others. How are the accused to know what particular paper, or what particular article of the paper, is referred to in

the indictment ? " These facts, it may be supposed, appeared from the indictment itself; and hence the court may have held, as seems to be implied by language of the opinion quoted, that because of them neither the title of the paper nor its general tenor and import as " an obscene, lewd and lascivious paper of indecent character " could in that case serve to any extent to make the charge definite and certain, as otherwise they might.

But in the case before us it does not appear that on motion to quash it did appear to the Circuit Court that any other number or numbers of the " Sunday Sun," purporting to be published in Chicago, Illinois, or any particular paper or papers of those numbers, or of either of them, than that or those intended by the counts respectively here in question, if any such were ever issued, were ever in any manner, by any body, circulated or shown or attempted so to be, to or by the use of any minor child, in the county of Macon in this State. No other such act, with reference to a minor child, was averred in, or by inference or otherwise appeared from these counts or either of them; and being criminal, was not to be presumed. If any such facts afterward appeared, upon the trial or otherwise, legitimately, they could not have borne upon the propriety of the ruling on the motion to quash.

There were, then, in each of them, undisturbed in their effect by any confusing fact, the following averments as means of identifying the particular paper intended, viz.: First, its proper name, " The Sunday Sun;" next, its residence, or place of publication, Chicago, Illinois; next, its business or occupation—that to which it was devoted; next, its character—that of which it was principally made up; next, the particular use to which it was put, in reference to a particular minor child named; and lastly, the place and time (presumably approximate, and in this case, as shown), at which this was done by the accused.

These facts would ordinarily and naturally concur only as to one and the same particular paper or publication. We should have no reasonable doubt, upon these averments, that

they fairly apprised him of the particular paper or papers which he was charged with having unlawfully used, and fully enabled him to prepare his defense. If we had any, his own testimony would entirely remove it. According to that he was neither the publisher nor mailer, nor at all, interested in the circulation of " The Sunday Sun," but was the general and salaried attorney of the publishers. While at Omaha, Nebraska, he was advised by them that the city authorities of Decatur had forbidden and were endeavoring to prevent its circulation in that city, as being in violation of a city ordinance (which is not shown, but presumed to be aimed at publications of its assumed character), and directed to proceed to the city and look after the matter. He accordingly went there, and tried to make a test case upon agreed facts, which was, perhaps, within the scope of his authority as such attorney. But the city authorities having refused to make it, he went further, and having inquired of the selling agents there for a boy who would not be afraid to sell them and been referred to Burt Damon, a boy then about fifteen years of age, took from them a package of the papers of the issue of November 13, 1892, sought the boy, who told him he was not afraid to sell them, and thereupon, by advice of the agent, called upon his mother, and for her consent to have him sell them, gave her $5, authorized her to retain all the receipts for papers of that package, and a few days later delivered to her a package of the papers of the issue of November 20, 1892, and authorized her for her like consent as to them, to retain three-fifths of the proceeds of their sales. He also told her that the boy would probably be arrested for selling them, but assured her that the publishers would defend him and pay whatever fine should be imposed, and indemnify him against all other losses or damages he should suffer.

Mrs. Damon delivered these packages to Burt and he sold from both, she settling for the proceeds according to the arrangement with plaintiff in error as stated. The city authorities arrested Burt, on complaint under the ordinance, but proceeded no further in his prosecution. The grand

Strohm v. The People.

jury, however, took up the matter, and found the indictment against plaintiff in error here reviewed. He had no other dealing with Burt, directly or indirectly, with reference to "The Sunday Sun." At one time while there he received from Burt, and at his request, because he feared he might lose them, about two dollars in nickels and pennies, for which he accounted to Mrs. Damon.

It would be idle to contend, upon the evidence, that he did not know to a moral certainty what particular publications were intended, and was not fully aware of the precise charge he was called upon to meet; and we are of opinion that though it would have been better to give the date or dates respectively of the paper or papers referred to, the indictment contained enough to give him the necessary information.

It was further objected to the fifth count, that it was framed under section three of the statute, and that said section is not within the purview of the title of the act, and is, therefore, unconstitutional and void. Art. IV, Sec. 13.

This point is barely stated and not at all argued. We think it not serious enough to raise the question of jurisdiction in this court. The object of the statute, as set forth in the title, was to prohibit any and every act which should bring to the attention of a minor child any paper or publication of the character therein described, and none that can be conceived would more clearly have that effect than the hiring, employing or using such a child to sell and circulate such a publication.

It is claimed as error that the defendant was tried without arraignment or plea; which the record shows is not true in fact.

The state's attorney was permitted to read to the jury in his opening, over objection, from an Indiana newspaper called "The Terre Haute Gazette," what purported to be extracts from an opinion delivered by Judge McNutt, presiding in a case involving the general character of this newspaper. By our statute (Sec. 431 of Crim. Code, Hurd's R. S. 531), jurors in all criminal cases are made judges of the

law and the fact. But whether of law or fact the question should be determined upon competent and sufficient evidence. The opinion, the reading from which is complained of, is not set out in whole or part in the abstract, but is fully shown in the record, from which it appears that the case was a bill in chancery to enjoin the police of Terre Haute against the seizure and suppression of numbers of the paper; that the answer alleged it was an obscene and indecent paper, and made as exhibits certain issues, of which only that of December 4, 1892, is specified in the opinion. The question was upon the sufficiency of the answer, and the court held it sufficient, on the ground that the character of " The Sunday Sun," as alleged and as shown by the issues exhibited, did not justify such an interposition in its favor of a court of equity as was asked.

In this opinion we discover nothing to be criticised. Nor do we consider the propriety of the practice said to prevail in this State, of reading reports of judicial opinions to the jury, at any stage of any criminal case, for the reason that the reading here complained of was improper in either view of that practice; not only because nothing is made evidence by being read or stated in argument, but also that the opinion did not relate to either of the numbers of " The Sunday Sun" here involved, nor was there any proof that those to which it did relate had any likeness to these. It was, therefore, not evidence of any law or fact pertinent here.

But this error could not have prejudiced the defendant. It would require no more than a very cursory examination of the two issues of the paper introduced in evidence to satisfy any competent and right-minded juror, beyond all reasonable doubt, that they were within the description, by the statute, as the class to be kept from the knowledge of minor children. Upon the face of these publications, no other finding as to their character and description than was found could have been properly reached or expected. No opinion of any judge could make it more clear or certain.

The only other suggestion of error is against the third instruction given for the people, which told the jury that as to the character of the papers, it would suffice to warrant a

verdict of guilty if they believed from the evidence beyond a reasonable doubt that they " were devoted to the publication and principally made up of criminal news, police reports or accounts of criminal deeds, and stories of deeds of bloodshed, lust and crime," which are the descriptive words of the statute, except that in it are the words, " or pictures," before the words " and stories of deeds of bloodshed, lust and crime" in the instruction. The contention is that stories of deeds of bloodshed, lust and crime, without pictures illustrating them, would not be within the description of the statute.

We hold that the statute, by a proper construction, embraced pictures of such deeds, with or without stories; and stories of such deeds with or without pictures. The subject against which it was intended to be directed was the matter of deeds of bloodshed, lust and crime, whether presented by words, or by pictures, or by both. The title of the act embraces publications devoted to "illustrating or describing immoral deeds." That the legislature intended that such matter might be presented to minor children, however grossly, by pictures without verbal stories, or by verbal stories without pictures, is a supposition not to be entertained. They meant to interdict such use of publications of each kind—the one *and* the other—meaning, plainly, either, or both in combination.

We have noticed all the points presented in the brief for plaintiff in error, and are fully satisfied that neither of them is tenable. The finding was amply supported by the evidence, and no material error appears in the rulings of the court. The judgment will therefore be affirmed.