## CZARRA v. BOARD OF MEDICAL SUPERVISORS OF THE DISTRICT OF COLUMBIA.

PHYSICIANS; REVOCATION OF LICENSE OF; MEDICAL SUPERVISORS.

1. A complaint against a medical practitioner charging him with having been accused in the police court of distributing obscene literature; of having forfeited collateral deposited by him in that court; and of having admitted in a conversation with the complainant that he had distributed the literature referred to,—does not allege acts sufficient to constitute unprofessional or dishonorable conduct, within the meaning of § 10 of the act of Congress of June 3, 1896 (29 Stat. at L. 198, chap. 313), regulating the practice of medicine in the District of Columbia, so as to justify the board of medical supervisors in revoking his license to practise his profession.

2. The right of a citizen to practise his profession is too important to be taken away from him without some reasonable cause.

3. While it is unnecessary to insert in a complaint either a writing of great length or matter of any kind which, because of its extreme obscenity, would pollute the public records, it is always essential to allege a reason justifying the omission, and, in addition, to describe it so fully as to identify it.

4. It is doubtful whether Congress has the power to delegate to the board of medical supervisors of this District, or to any other similar body, the authority to determine what shall constitute unprofessional or dishonorable conduct in a medical practitioner, so far as to render him guilty of a criminal offense if he attempts to continue in the practice of his profession after having been adjudged guilty of such conduct by the board. It would seem to be more appropriate for Congress itself to specifically define what shall constitute such conduct.

No. 1409.   Submitted April 13, 1904.   Decided November 9, 1904.

HEARING on an appeal by the respondent from a decision of the Board of Medical Supervisors of the District of Columbia, revoking the license of the respondent to practise medicine in the District of Columbia, on the ground of his alleged unprofessional and dishonorable conduct.                    *Reversed.*

The COURT in the opinion stated the case as follows:

This is an appeal from the decision of the board of medical supervisors of the District of Columbia revoking the license of the appellant, Sigmund A. Czarra, to practise medicine and surgery in said District, on account of alleged unprofessional and dishonorable conduct, as set forth in a complaint exhibited to said board.

The authority of said board to revoke the licenses of physicians is derived from § 10 of an act of Congress of June 3, 1896 (29 Stat. at L. 198, chap. 313), entitled "An Act to Regulate the Practice of Medicine and Surgery, to License Physicians and Surgeons, and to Punish Persons Violating the Provisions Thereof, in the District of Columbia." Said act authorizes the revocation of licenses for any of the following causes:

"The employment of fraud or deception in passing the examinations provided for in this act, chronic inebriety, the practice of criminal abortion, conviction of crime involving moral turpitude, or of unprofessional or dishonorable conduct."

It is also provided, in § 10 of said act, as follows:

"In complaints under this section the accused shall be furnished with a copy of the complaint and given a hearing before said board, in person or by attorney, and witnesses may be heard for and on behalf of the accused, and for and on behalf of the said board. Appeal from the decision of said board may be taken to the court of appeals of the District of Columbia, and the decision of said court shall be final."

On the 6th day of January, 1904, a complaint was presented before the board against the appellant, Czarra, in the following language:

I, Charles W. Proctor, a member of the metropolitan police force of the District of Columbia, comes now and complains and causes the board to be informed that Sigmund A. Czarra, a licentiate of your board, was arrested and charged in the police court of the District of Columbia with distributing obscene literature, and when the case against him was called in the said court he forfeited the collateral of $50, which he had put up for his appearance, and in conversation with the said Czarra he admitted to your complainant that he had distributed the circular for which he was arrested and forfeited collateral, all of which is conduct of an unprofessional and dishonorable character, and your complainant requests an investigation of this complaint and in case found sufficient to ask that the license of the said Czarra be revoked.

C. W. PROCTOR.

Subscribed and sworn to this sixth day of January, 1904.

JOSEPH HARPER,

Notary Public, D. C.

JAMES L. PUGH, Jr.,

Asst. Corporation Counsel in

Charge of Presenting Charges.

A copy of this complaint was served upon the appellant, Czarra, together with notice of the time and place of hearing to be had thereon.

At the hearing before the board Czarra filed in his own proper person a plea to its jurisdiction, denying —

"The legal power and authority of said board to determine whether he is guilty of the offense of distributing an obscene circular or other lewd or immoral publication in the District of Columbia, the law having vested such jurisdiction in the police court of the said District alone, and the said board having no power to revoke his license as a physician in the said District until he shall have been duly tried and convicted of such offense so· charged against him as Sigmund A. Czarra in said court.

"And he, the said Sigmund A. Czarra, craves reference to the duly certified transcript of the record of said court filed here-

with, from which it will appear that, although charged with such offense therein on the 4th day of February, 1903, he has never been convicted on said charge, or brought to trial thereon, although he has ever since resided within the jurisdiction of said court, and has been engaged in the practise of his profession in its immediate vicinity ever since the said date.

"Wherefore the said Sigmund A. Czarra, M. D., respectfully moves the said board of medical supervisors to dismiss the said information as unwarranted by law, it not being alleged therein that he has been convicted of the said offense, and it appearing that he has never been adjudged guilty thereof."

The proceeding was further objected to by the appellant on the ground that the complaint filed against him was insufficient, because —

"There is no identification of the *corpus delicti,* * * * there is no specification, * * * nothing to which this party can plead. * * * It does not designate a circular, book, or pamphlet. * * * There is no means of identification by which he may be informed of the nature and cause of his offense."

These objections were overruled by the board, and the trial proceeded with, resulting in a revocation of appellant's license.

*Mr. George P. Hoover* and *Mr. Mason N. Richardson* for the appellant.

*Mr. Andrew B. Duvall,* Corporation Counsel, and *Mr. A. Leftwich Sinclair,* Assistant, for the appellee:

1. The law is not void for uncertainty. The statutes generally contain a provision authorizing the board to revoke a license where the holder has been guilty of unprofessional or dishonorable conduct, or where he has been convicted of a felony; and the constitutionality and validity of these statutes have been upheld. 22 Am. & Eng. Enc. Law, 2d ed. p. 784, and cases cited; *Hawker* v. *New York,* 170 U. S. 89; *Dent* v. *West Virginia,* 129 U. S. 114; *State* v. *Medical Examining Board,* 32

Minn. 324; *State* v. *Medical Examiners,* 34 Minn. 391; *State* v. *Kellogg,* 14 Mont. 426; *Board of Health* v. *McCoy,* 125 Ill. 289; *Williams* v. *People,* 121 Ill. 84; *Traer* v. *Medical Examiners,* 106 Iowa, 559; *State* v. *Mosher,* 78 Iowa, 321; *Re Smith,* 10 Wend. 449; *Re Campbell,* 107 Pa. 581.

2. "Or" is not always disjunctive. *Arthur* v. *Cummings,* 91 U. S. 362; *Weilbacher* v. *Merrit,* 37 Fed. 87. It is often used in statutes in the sense of "to wit," or "that is to say," in explanation of what precedes. *People* v. *Nordhein,* 99 Ill. 560; *Blemer* v. *People,* 76 Ill. 265; *Brown* v. *Com.* 8 Mass. 59; *Com.* v. *Grey,* 2 Gray, 502; *State* v. *Gilbert,* 13 Vt. 647; *Morgan* v. *Com.* 7 Gratt. 592; *Clifford* v. *State,* 29 Wis. 327; 1 Bishop, Crim. Proc. § 590.

3. Legislation cannot be nullified on the ground of uncertainty, if susceptible of any reasonable construction that will support it. 26 Am. & Eng. Enc. Law, 2d ed. p. 657, and cases cited. And see *Railroad Co.* v. *Com.* 103 Ky. 605; *Lansburgh* v. *District of Columbia,* 11 App. D. C. 512.

4. The objection as to the sufficiency of the complaint was made for the first time in this court, and it comes too late and will not be considered. *McAfee* v. *Huidekoper,* 9 App. D. C. 36, 34 L. R. A. 720; *Gas Light Co.* v. *Lansden,* 9 App. D. C. 508; *Railroad Co.* v. *Golway,* 6 App. D. C. 143; *Roller* v. *Caruthers,* 5 App. D. C. 368; *Harris* v. *Leonhardt,* 2 App. D. C. 318.

5. The complaint was sufficient to enable the accused to make his defense, and contained facts which constituted an offense. *State* v. *Kellogg,* 14 Mont. 126; *Com.* v. *Robertson,* 162 Mass. 90; 10 Enc. Pl. & Pr. p. 477.

Mr. Justice ANDERSON, of the Supreme Court of the District of Columbia, who sat with the Court in the hearing of the case in the absence of Mr. Chief Justice ALVEY, delivered the opinion:

The appellant asks for a reversal of the board's action, and assigns as error the following:

1. The said board of medical supervisors were without author-

ity to pass the resolution revoking the license of the appellant, because so much of the act of Congress of June 3, 1896, as purports to confer upon said board authority to revoke the license of a licentiate for "unprofessional or dishonorable conduct" is unconstitutional and void for uncertainty.

2. That the complaint filed against the appellant does not state facts sufficient to cause him to answer.

3. That the said board of medical supervisors erred in revoking the license of the appellant, for the reason that the evidence adduced at the hearing was not sufficient to warrant the board in revoking the license of the appellant.

Under the view we take of this case, we do not deem it necessary or proper to consider the appellant's first and third objections. It is sufficient for the right disposition of this case, as it seems to us, to pass upon the single question of the alleged insufficiency of the complaint filed against the appellant.

A careful reading of the complaint filed against the appellant fails to disclose that he is anywhere charged with anything for which he could be held to answer under any possible interpretation of the act in question. In its final analysis, the complaint simply charges—

(1) That the appellant was "arrested and charged in the police court of the District of Columbia with distributing obscene literature."

(2) That "when the case against him was called in the said court he forfeited the collateral of $50, which he had put up for his appearance."

(3) That the appellant, in conversation with the complainant (Proctor), admitted "that he had distributed the circular for which he was arrested and forfeited collateral."

(4) "All of which is conduct of an unprofessional and dishonorable character."

The language of this complaint may be searched in vain to find any charge of unprofessional or dishonorable conduct against the appellant, unless it could be said that by being charged in the police court with distributing obscene literature, depositing collateral, and thereafter forfeiting such collateral,

the appellant was guilty of unprofessional or dishonorable con-
duct.   It is not even charged that the circular which is alleged
to have been distributed was distributed within the District of
Columbia, nor that the appellant ever distributed it at all.   He
is simply charged with having made the admission that he had
distributed the circular referred to; and surely such admission
does not constitute "unprofessional or dishonorable conduct"
within the meaning of the statute.   The alleged distribution
should have been charged as a fact, if such was relied upon as
the ground of complaint, and not the mere admission of such dis-
tribution.   It is not conceivable that any man can be held to an-
swer a charge so grave in its character and so far-reaching in its
influence upon his standing and reputation as a physician, and
yet so vague and indefinite as this.

As was said by the court in *People use of State Bd. of Health*
v. *McCoy,* 125 Ill. 295, 17 N. E. 786 : "The right of the citizen
to practise his profession, for which he has expended time and
money to qualify himself, is too important to be taken away from
him without some reasonable cause."

The language of the court in *State ex rel. Baldwin* v. *Kellogg,*
14 Mont. 432, 36 Pac. 957, may also be quoted in this connec-
tion:   "We are of opinion that, before such a tribunal, plead-
ings should not be too strictly construed, nor should a too close
observance of the science of pleading be required.   But it can-
not for one moment be doubted that the complaint must set forth
facts which constitute an offense.   *   *   *   If the judgment
is against him he is deprived of the right to practise his profes-
sion, to which, perhaps, he has devoted a life of learning and la-
bor.   In a situation of this gravity, a defendant has the right,
within the spirit of the Constitution, 'to demand the nature and
cause of the accusation' (Const. art. 3, § 16) ; that is to say, a
defendant must be notified of what he is charged, and he must be
charged with something."

Even if the complaint in this case could be reasonably con-
strued as charging the appellant with the distribution of "ob-
scene literature," yet it wholly fails to so identify such literature
as to give him notice of the charge which he was to meet or to en-

able the board to determine whether or not it had jurisdiction over the case, and whether the charge was sufficient in law to support a finding as prayed for.

As was said by the Supreme Court of the United States in *Ball* v. *United States,* 140 U. S. 136, 35 L. ed. 384, 11 Sup. Ct. Rep. 761: "The accused is entitled to be informed of the nature and cause of the accusation against him, and jurisdiction should not be exercised when there is doubt as to the authority to exercise it."

And in the earlier case of *United States* v. *Hess,* 124 U. S. 487, 31 L. ed. 518, 8 Sup. Ct. Rep. 571, the Supreme Court said: "The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this facts are to be stated, not conclusions of law alone."

While it is, of course, unnecessary (and, in fact, not permissible) to insert into a complaint either a writing of great length, or matter of any kind which, because of its extreme obscenity, would pollute the public records, it is always essential to allege the reason justifying the omission, and, in addition, to describe it so fully as to identify it. *United States* v. *Bennett,* 16 Blatchf. 338, Fed. Cas. No. 14,571; *Com.* v. *Holmes,* 17 Mass. 336; *Com.* v. *McCance,* 164 Mass. 162, 29 L. R. A. 61, 41 N. E. 133; *McNair* v. *People,* 89 Ill. 441; *Strohm* v. *People,* 60 Ill. App. 128; *People* v. *Danihy,* 63 Hun, 579, 18 N. Y. Supp. 467; *State* v. *Freeman,* 63 Vt. 496, 22 Atl. 621.

In *Com.* v. *McCance,* 164 Mass. 162, 29 L. R. A. 61, 41 N. E. 133, the defendant was charged with selling a book containing, among other things, "obscene language," and the court held that, although it was not necessary to set out the book in full, the complaint would have to be quashed because of its failure to identify with any reasonable certainty the "obscene language" relied upon.

In *Com.* v. *Holmes,* 17 Mass. 336 (a leading case), an indictment charged the printing of a "certain lewd, wicked, scandalous, infamous, and obscene printed book entitled ['Memoirs of a Woman of Pleasure'], which said printed book is so lewd, wicked, and obscene that the same would be offensive to the court here, and improper to be placed upon the records thereof," and the court held the indictment, giving as it did, an excuse for not setting out the matter at large, and also an identification of the book by its title, sufficient, saying: "It can never be required that an obscene book or picture should be displayed upon the records of the court, which must be done if the description in these counts is insufficient. This would be to require that the public itself should give permanency and notoriety to indecency in order to punish it."

In the case now before the court, however, there is no identification whatever in the complaint itself of the "obscene literature," relied upon, and, since this objection has not been waived by the appellant, but, on the contrary, was expressly brought to the attention of the board at the hearing below (p. 6 of record), the appellant ought to have the benefit thereof.

While we base our opinion in this case on the insufficiency of the complaint filed against the appellant, it is proper to note that this was not the principal question that was dwelt upon in argument. In fact, almost the whole burden of the argument was devoted to the question of the alleged invalidity of the statute for the violation of which the appellant was tried. Without expressing any opinion on this point in a case so radically defective as the present, and in which the expression of an opinion by us might possibly be characterized as *obiter dictum,* we desire to call the attention of the authorities to the fact that grave doubt is entertained as to the power of Congress to delegate to the board of medical supervisors, or to any other similar body, the authority to determine what shall constitute "unprofessional or dishonorable conduct" in a medical practitioner so far as to render such a practitioner guilty of a criminal offense if he attempts to continue in the practice of his profession after having been adjudged guilty of such conduct by a board of medical supervi-

sors.   Certainly it would seem more appropriate that Congress itself in its enactments should specifically define what shall constitute "unprofessional or dishonorable conduct" for the purpose of this legislation, than leave so vital a subject to the possible caprice of any board of supervisors.

For the reasons stated, the decision of the Board of Medical Supervisors must be *reversed, with costs;* and it is so ordered.