COMMONWEALTH *vs*. ALEXANDER McCANCE.

Suffolk.   November 26, 1894. — June 24, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP
& BARKER, JJ.

*Indictment not specifying the Parts of a Book relied on as Obscene.*

An indictment under St. 1890, c. 70, charging the defendant with selling a book
containing, among other things, obscene language, must be quashed if it does not
specify with reasonable certainty the parts of the book relied on as obscene.

FIELD, C. J. This is an indictment under St. 1890, c. 70.
The defendant is charged with " knowingly, unlawfully, felo-
niously, wickedly, and scandalously " selling " to one Jefferson
H. Parker a certain book, then and there called ' The De-
cameron of Boccaccio,' and which said book, upon the title-
page thereof, was then and there of the tenor following, that
is to say, ' The Decameron ; or Ten Days' Entertainment of
Boccaccio. A revised translation by W. K. Kelly, with por-
trait and ten illustrations, drawn and engraved by Leopold
Flameng. Published for the Trade,' — and which said book
then and there contained, among other things, certain obscene,
indecent, and impure language, and manifestly tending to the
corruption of the morals of youth, which said book is so lewd,
obscene, indecent, and impure that the same would be offen-
sive to the court here and improper to be placed upon the
records thereof, wherefore said jurors do not set forth the same
in this indictment," etc. The defendant moved to quash the
indictment for this among other reasons, that " the indictment
sets forth in no legal and sufficient terms wherein said book
is amenable to the penalties denounced by the statute ; no
specifications of any offending passage is [*sic*] exhibited." This
motion was overruled, and the defendant excepted.

The exceptions also recite as follows : " The government
introduced in evidence the book described in the indictment,
and caused to be read the following passages from the said
book : Novel 1, Third Day ; Novel 2, Fourth Day ; Novel 4,
Fifth Day ; Novel 7, Sixth Day ; Novel 8, Eighth Day ; Novel

6, Ninth Day. No evidence of the character of the book was adduced by the Commonwealth other than the book itself."

The book introduced in evidence is a volume of 710 printed pages, most of which are in the English language, but a few pages are in the original Italian language, with a translation of these into the French language appended. There is a short preface, and at the end of some of the novels are short historical notes by the translator, and each day's entertainment is preceded by an introduction. The Decameron of Boccaccio is a book well known to students of literature, and contains ten novels or stories for each of ten days' entertainment. Of these one hundred novels six only were introduced in evidence by the Commonwealth. We cannot know what parts of the book the grand jury found to be obscene, indecent, and impure, and we know of no way whereby from the indictment the defendant could know before the trial what parts of the book would be put in evidence by the Commonwealth.

The first precedent, so far as we know, for an indictment in this form, is the second count of the indictment in *Commonwealth* v. *Holmes*, 17 Mass. 336. In that case the court say : " The second and fifth counts in this indictment are certainly good; for it can never be required that an obscene book and picture should be displayed upon the records of the court; which must be done if the description in these counts is insufficient. This would be to require that the public itself should give permanency and notoriety to indecency, in order to punish it." This decision has been followed by many of the courts in this country. See *People* v. *Girardin*, 1 Mich. 90; *State* v. *Pennington*, 5 Lea, (Tenn.) 506 ; *McNair* v. *People*, 89 Ill. 441; *Fuller* v. *People*, 92 Ill. 182 ; *State* v. *Brown*, 27 Vt. 619 ; *State* v. *Griffin*, 43 Tex. 538 ; *State* v. *Smith*, 17 R. I. 371 ; *United States* v. *Bennett*, 16 Blatchf. C. C. 338. No authorities are cited in *Commonwealth* v. *Holmes*, and the opinion in *Commonwealth* v. *Wright*, 1 Cush. 46, shows that the decision in *Commonwealth* v. *Holmes* must be regarded as an exception to the general rule of pleading relating to libellous publications.

*Commonwealth* v. *Tarbox*, 1 Cush. 66, decides that in an indictment for publishing an obscene paper, if the indictment purports to set out the alleged obscene publication, it must do it

in the very words of the paper, and the court say: "The excepted cases occur, whenever a publication of this character is so obscene as to render it improper that it should appear on the record; and, then, the statement of the contents may be omitted altogether, and a description thereof substituted; but, in this case, a reason for the omission must appear in the indictment, by proper averments." See *Commonwealth* v. *Dejardin*, 126 Mass. 46. *Commonwealth* v. *Wright*, 139 Mass. 382, where the indictment was quashed, decides that the indictment "must, at least by some general description, identify the paper" which is alleged to contain obscene matter, and which the defendant is charged with publishing. This question of the mode of pleading in cases of this kind was considered in England by the Court of Appeal in *Bradlaugh* v. *The Queen*, 3 Q. B. D. 607, and it was unanimously decided that the words alleged to be obscene must be set out according to their tenor. The two principal Massachusetts cases were considered, and the decision in *Commonwealth* v. *Holmes* was not approved. Ibid. 621, 638, 641.

But the weight of authority in this country is in favor of the decision in *Commonwealth* v. *Holmes*, and the principle of that decision has been several times recognized by this court as correct, and we think that it must be regarded as an established rule of law in this Commonwealth.

It remains to be considered whether the present indictment contains a reasonably specific description of the obscene, indecent, and impure language which it is alleged that the book, among other things, contains. The Decameron of Boccaccio was probably not written for the purpose of corrupting the morals of youth. It was written long before the invention of printing, when the number of persons who could read were few, and it is supposed to represent the taste of many cultivated people of the world in Italy at the time. It was read for the entertainment of men and women. Parts of it are coarse, and according to the standards of modern times are obscene, indecent, and impure, and other parts of it are decent and pure enough to be read by the present generation. Because it is not a book which is wholly obscene, indecent, and impure, the book is described in the indictment as containing, "among other things, certain obscene, indecent, and impure language." If books of

this character are to be regarded as within the provisions of St. 1890, c. 70, upon which we express no opinion, we think it reasonable that the parts of the book which the grand jury find to be obscene, indecent, and impure, should be described or referred to in the indictment so specifically that they can be identified by the evidence, unless they are set out according to their tenor. In the present indictment it cannot be known that the defendant has not been indicted upon evidence relating to certain parts of the book, and convicted upon evidence relating to other parts. A picture or print has no tenor, and must of necessity be set out by description, but printed words always can be set out according to their tenor. If this is not done because it is alleged that the language is too indecent to be placed on the records of the court, we think that, in the absence of any statute regulating the procedure, the law requires that the language complained of should be identified by such a description or reference that it may be known that the indictment was found upon the language which is put in evidence and relied on at the trial. If the obscene language complained of appears only in some passages in a book, the rest of which is free from obscenity, the book as a whole should not be presented, but only the book as containing these obscene passages.

The records of the Court of Common Pleas and of the Supreme Judicial Court for the County of Worcester contain no copy of the book entitled " Memoirs of a Woman of Pleasure," referred to in the indictment in *Commonwealth* v. *Holmes*, but apparently the whole book was presented and the indictment was at common law. The statutes on the subject were first enacted here in Rev. Sts. c. 130, § 10. It may be suggested that, on a motion to quash the indictment, the court cannot take judicial notice of the contents of the book referred to in the indictment. But it appears by the indictment that the book referred to contains other things than the obscene language complained of, and no attempt has been made in the indictment to distinguish between these other things and the obscene language, and no excuse has been given in the indictment for not designating the parts of the book complained of, and the evidence shows that the indictment might easily have described or referred to the novels put in evidence, so that the defendant could

have known to what he was called upon to answer at the trial. We are of opinion that the indictment is not reasonably specific, and that it should have been quashed. The exceptions taken at the trial need not be considered.

*Exceptions sustained.*

*P. H. Hutchinson,* for the defendant.

*F. E. Hurd,* First Assistant District Attorney, for the Commonwealth.