## ROSEN v. UNITED STATES.

ERROR TO THE CIRCUIT OF THE UNITED STATES FOR THE SOUTH-
ERN DISTRICT OF NEW YORK.

No. 424. Argued October 29, 1895. — Decided January 27, 1896.

The constitutional right of a defendant to be informed of the nature and cause of the accusation against him entitles him to insist, at the outset, by demurrer or by motion to quash, and, after verdict, by motion in arrest of judgment, that the indictment shall apprise him of the crime charged with such reasonable certainty that he can make his defence and protect himself after judgment against another prosecution for the same offence; and this right is not infringed by the omission from the indictment of indecent and obscene matter, alleged as not proper to be spread upon the records of the court, provided the crime charged, however general the language used, is yet so described as reasonably to inform the accused of the nature of the charge sought to be established against him; and, in such case, the accused may apply to the court before the trial is entered upon for a bill of particulars, showing what parts of the paper would be relied on by the prosecution as being obscene, lewd, and lascivious, which motion will be granted or refused, as the court, in the exercise of a sound legal discretion, may find necessary to the ends of justice.

The inquiry, in proceedings under Rev. Stat. § 3893, is whether the paper charged to have been obscene, lewd, and lascivious was in fact of that character, and if it was of that character and was deposited in the mail by one who knew or had notice at the time of its contents, the offence is complete, although the defendant himself did not regard the paper as one that the statute forbade to be carried in the mails.

Every one who uses the mails of the United States for carrying papers or publications must take notice of what, in this enlightened age, is meant

by decency, purity, and chastity in social life, and what must be deemed obscene, lewd, and lascivious.

When the evidence before the jury, if clear and uncontradicted upon any issue made by the parties, presents a question of law, the court can, without usurping the functions of the jury, instruct them as to the principles applicable to the case made by such evidence.

THE case is stated in the opinion.

*Mr. William N. Cohen* for plaintiff in error.

*Mr. Assistant Attorney General Whitney* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

The plaintiff in error was indicted under section 3893 of the Revised Statutes, providing that " every obscene, lewd, or lascivious book, pamphlet, picture, paper, writing, print, or other publication of an indecent character,  .   .   .   and every article or thing intended or adapted for any indecent or immoral use, and every written or printed card, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, or how, or of whom, or by what means, any of the hereinbefore mentioned matters, articles, or things may be obtained or made,  .   .   .   are hereby declared to be non-mailable matter, and shall not be conveyed in the mails, nor delivered from any post office nor by any letter carrier; and any person who shall knowingly deposit, or cause to be deposited, for mailing or delivery, anything declared by this section to be non-mailable matter, and any person who shall knowingly take the same, or cause the same to be taken, from the mails, for the purpose of circulating, or disposing of, or of aiding in the circulation or disposition of the same, shall be deemed guilty of a misdemeanor, and shall for each and every offence be fined not less than one hundred dollars nor more than five thousand dollars, or imprisoned at hard labor not less than one year nor more than ten years, or both, at the discretion of the court.  .   .   ."

The defendant pleaded not guilty, and the trial was entered

upon without objection in any form to the indictment as not sufficiently informing the defendant of the nature of the charge against him.

A verdict of guilty having been returned, the accused moved for a new trial upon the ground, among others, that the indictment was fatally defective in matters of substance. That motion was denied.

The defendant thereupon moved in arrest of judgment upon the ground that the indictment did not charge that he *knew*, at the time, what were the contents of the paper deposited in the mail and alleged to be lewd, obscene, and lascivious. This motion was also denied, and the accused was sentenced to imprisonment at hard labor during a period of thirteen months, and to pay a fine of one dollar.

The paper, " Broadway," referred to in the indictment, was produced in evidence, first, by the United States, and afterwards by the accused. The copy read in evidence by the government was the one which, it was admitted at the trial, the defendant had caused to be deposited in the mail. The pictures of females appearing in that copy were, by direction of the defendant, partially covered with lamp black that could be easily erased with a piece of bread. The object of sending them out in that condition was, of course, to excite a curiosity to know what was thus concealed. The accused read in evidence a copy that he characterized as a " clean " one, and in which the pictures of females, in different attitudes of indecency, were not obscured by lamp black.

The defendant having indicated his purpose to bring the case here for review, the court below ordered these papers to be sent to the clerk of this court with the transcript of the proceedings below.

1. The first contention of the plaintiff in error is, that the indictment was fatally defective in not alleging that the paper in question was deposited in the mail with knowledge on his part that it was obscene, lewd, and lascivious.

The indictment charged that the accused, on the 24th day of April, 1893, within the Southern District of New York, " did unlawfully, wilfully, and knowingly deposit and cause

to be deposited in the post office of the city of New York, for mailing and delivery by the post office establishment of the United States, a certain obscene, lewd, and lascivious paper; which said paper then and there, on the first page thereof, was entitled 'Tenderloin Number, Broadway,' and on the same page were printed the words and figures following — that is to say: 'Volume II, number 27; trade-mark, 1892; by Lew Rosen; New York, Saturday, April 15, 1893; ten cents a copy, $4.00 a year, in advance;' and thereupon, on the same page, is a picture of a cab, horse, driver, and the figure of a female, together (underneath the said picture) with the word 'tenderloineuse,' and the said paper consists of twelve pages, minute descriptions of which, with the pictures therein and thereon, would be offensive to the court and improper to spread upon the records of the court, because of their obscene, lewd, and indecent matters; and the said paper, on the said twenty-fourth day of April, in the year one thousand eight hundred and ninety-three, was enclosed in a wrapper and addressed as follows — that is to say, 'Mr. Geo. Edwards, P. O. box 510, Summit, N. J.' — against the peace of the United States and their dignity and contrary to the statute of the United States in such case made and provided."

Undoubtedly the mere depositing in the mail of a writing, paper, or other publication of an obscene, lewd, or lascivious character is not an offence under the statute if the person making the deposit was, at the time and in good faith, without knowledge, information, or notice of its contents. The indictment would have been in better form if it had more distinctly charged that the accused was aware of its character. But this defect should be regarded, after verdict and under the circumstances attending the trial, as one of form under section 1025 of the Revised Statutes providing that the proceedings on an indictment found by a grand jury in any District, Circuit, or other court of the United States, shall not be affected " by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant." *United States* v. *Chase*, 27 Fed. Rep. 807; *United States* v. *Clark*, 37 Fed. Rep. 106.

The indictment on its face implies that the defendant owned or managed the paper Broadway. He admitted at the trial that he owned and controlled it. He did not pretend that he was ignorant at the time of the contents of the particular number that he caused to be put in the post office at New York. The general charge that he "unlawfully, wilfully, and knowingly deposited and caused to be deposited in the post office . . . a certain obscene, lewd, and lascivious paper"— describing it by its name, volume, number, date of trade-mark, date of issue, and as having on it the name of Lew Rosen, proprietor, the same name borne by the defendant — may, not unreasonably, be construed as meaning that the defendant was, and must have been, aware of the nature of its contents at the time he caused it to be put into the post office for transmission and delivery. Of course he did not understand the government as claiming that the mere depositing in the post office of an obscene, lewd, and lascivious paper was an offence under the statute, if the person so depositing it had neither knowledge nor notice, at the time, of its character or contents. He must have understood from the words of the indictment that the government imputed to him knowledge or notice of the contents of the paper so deposited.

In their ordinary acceptation, the words "unlawfully, wilfully, and knowingly" when applied to an act or thing done, import knowledge of the act or thing so done, as well as an evil intent or bad purpose in doing such thing; and when used in an indictment in connection with the charge of having deposited in the mails an obscene, lewd, and lascivious paper, contrary to the statute in such case made and provided, could not have been construed as applying to the mere depositing in the mail of a paper the contents of which at the time were wholly unknown to the person depositing it. The case is therefore not one of the total omission from the indictment of an essential averment, but, at most, one of the inaccurate or imperfect statement of a fact; and such statement, after verdict, may be taken in the broadest sense authorized by the words used, even if it be adverse to the accused.

2. The defendant also contends that the indictment was

fatally defective, in that it did not set out with reasonable particularity those parts of the paper relied on to support the charge in the indictment. He insists that the omission from the indictment of a description of the pictures of female figures found in the paper was in violation of the constitutional guaranty that the defendant in a criminal case shall be informed of the nature and cause of the accusation against him. Sixth Amendment.

A defendant is informed of the nature and cause of the accusation against him if the indictment contains such description of the offence charged as will enable him to make his defence and to plead the judgment in bar of any further prosecution for the same crime. Does the indictment in this case meet these requirements? It describes the paper alleged to be obscene, lewd, and lascivious with such minuteness as to leave no possible doubt as to its identity. If the defendant did not have in his possession or could not procure a duplicate of such paper, he could have applied to the court for an order that he be furnished with a bill of particulars to the end that he might properly defend himself at the trial. *United States* v. *Bennett*, 16 Blatchford, 338, 351; *Rex* v. *Hodgson*, 3 Car. & P. 422; Wharton's Cr. Pl. & Pr. § 702. He made no such application but went to trial without suggesting that he was not sufficiently informed by the indictment of the nature and cause of the accusation against him. When the paper in question was produced in evidence he made no objection to it as not being sufficiently described in the indictment, but at the conclusion of the evidence on the part of the prosecution moved to dismiss on the ground that the paper was not obscene. This motion having been overruled he testified in his own behalf, offering in evidence a duplicate of the same paper, admitting that lamp black — capable of being easily removed so as to bring each offensive picture in full view of any person receiving or inspecting the paper — had by his direction been put on the entire edition of April 15, 1893. He now insists that the indictment was fatally defective, because it did not disclose in detail the contents of the twelve pages that were charged to constitute an obscene, lewd, and lascivious paper.

If it be said that he did not know what part of the twelve pages were considered by the grand jury as obscene, lewd, and lascivious, the answer is that he was not entitled to know what passed in the conferences of grand jurors. He was not entitled to show, as matter of defence, that the grand jury proceeded on insufficient grounds. He had to meet only the case made by the indictment and by the evidence adduced by the government. And if he wished to be informed, before entering upon the trial, what particular parts of the paper would be relied on as bringing the case within the statute, he could, as already suggested, have applied for a bill of particulars, which the court, in the exercise of a sound legal discretion, might have granted or refused as the ends of justice required.

The principal authority relied on in support of the defendant's contention is the case in England of an indictment for publishing an obscene libel, namely, "a certain indecent, lewd, filthy, and obscene book called 'Fruits of Philosophy,' thereby contaminating, vitiating, and corrupting the morals, etc." The jury found that the book was obscene, and a motion in arrest of judgment was made by the accused. The motion was denied, Cockburn, C. J., Mellor, J., concurring, held : "If the omission is in the indictment — if that be the objection, and it be a valid one — it is an objection that ought to have been taken by demurrer, and, therefore, I cannot help thinking that, upon the balance of convenience we shall act more wisely in saying that the judgment pronounced on this indictment ought not to be set aside by making the motion absolute to arrest the judgment; but if there be any valid foundation for the contention the defendants have raised upon the indictment it should be taken by demurrer." *Queen* v. *Bradlaugh*, 2 Q. B. D. 569, 573. The judgment was reversed in the Court of Appeal, which held that in an indictment for publishing an obscene book, described only by its title, the words alleged to be obscene must be set out, and their omission would not be cured by a verdict of guilty. In his opinion in that case, Lord Justice Brett considered what kind of omissions would be cured by verdict, and declared, as the result of

the authorities, that "in every kind of crime which consists in words, if the words complained of are not set out in the indictment or information, the objection is fatal in arrest of judgment." But he also said: "I would strike out of the category of the cases which we are considering all cases with regard to obscene prints and obscene pictures. The publication of obscene prints and obscene pictures may be in one sense libellous, but they are not words, and therefore they do not seem to me to fall within the rules as to criminal pleadings which we are considering here to-day." *Bradlaugh* v. *Queen*, 3 Q. B. D. 607, 634.

Looking at the cases in the American courts, we find that in *Commonwealth* v. *Sharpless*, 2 Seargeant & Rawle, 91, 103, (1815) which was an indictment for exhibiting an obscene picture, it was objected, after verdict and on motion in arrest of judgment, that the picture was not sufficiently described. Chief Justice Tilghman said: "We do not know that the picture had any name, and therefore, it might be impossible to designate it by name. What then is expected? Must the indictment describe minutely the attitude and posture of the figures? I am for paying some respect to the chastity of our records; these are circumstances which may be well omitted. Whether the picture was really indecent, the jury might judge from the *evidence*, or, if necessary, from *inspection;* the witnesses could identify it. I am of opinion, that the description is sufficient."

The question was considered in Massachusetts in 1821, in *Commonwealth* v. *Holmes*, 17 Mass. 336, 337. That was an indictment for publishing a lewd and obscene print, contained in a certain book entitled "Memoirs of a Woman of Pleasure," and for publishing the same book. Two of the counts alleged that the printed book was so lewd, wicked, and obscene "that the same would be offensive to the court here, and improper to be placed upon the records thereof." Chief Justice Parker, speaking for the court, held these counts to be good, saying: "It can never be required that an obscene book and picture should be displayed upon the records of the court: which must be done, if the description in these counts is insufficient. This

would be to require that the public itself should give perma-
nency and notoriety to indecency, in order to punish it." Sub-
sequently, in *Commonwealth* v. *Tarbox*, 1 Cush. 66, 72, which
was an indictment under a state enactment for printing, pub-
lishing, and distributing an obscene paper, the court said:
"In indictments for offences of this description, it is not
always necessary that the contents of the publication should
be inserted; but, whenever it is necessary to do so, or when-
ever the indictment undertakes to state the contents, whether
necessary or not, the same rule prevails as in the case of libel,
that is to say, the alleged obscene publication must be set out
in the very words of which it is composed, and the indictment
must undertake or profess to do so, by the use of appropriate
language. The excepted cases occur whenever a publication
of this character is so obscene, as to render it improper that
it should appear on the record; and, then, the statement of
the contents may be omitted altogether, and a description
thereof substituted; but, in this case, a reason for the omission
must appear in the indictment, by proper averments. The
case of *Commonwealth* v. *Holmes,* 17 Mass. 336, furnishes both
an authority and a precedent for this form of pleading." In
*Commonwealth* v. *McCance*, 164 Mass. 162, an indictment
charging the defendant with selling a certain book containing,
among other things, obscene language, was held to be insuffi-
cient. The court distinguished the case before it from previ-
ous cases, and said that while the principle announced in
*Commonwealth* v. *Holmes* must be regarded as an exception
to the general rule relating to libellous publications, the
weight of authority in this country was in favor of that deci-
sion.

So, in *People* v. *Girardin*, 1 Michigan, 90, 91, which was
an indictment for printing and publishing a certain paper
described by its title, and characterized as wicked, obscene, etc.,
the court said: "There is another rule as ancient as that con-
tended for by the counsel for the prisoner, which forbids the
introduction in an indictment of obscene pictures and books.
Courts will never allow their records to be polluted by bawdy
and obscene matters. To do this would be to require a court

of justice to perpetuate and give notoriety to an indecent pub-
lication, before its author could be visited for the great wrong
he may have done to the public or to individuals.   And there
is no hardship in this rule.   To convict the defendant, he must
be shown to have published the libel ; if he is the publisher he
must be presumed to have been advised of the contents of the
libel, and fully prepared to justify it.   The indictment in this
cause corresponds with the precedents to be found in books of
the highest merit."

In *State* v. *Brown*, 27 Vermont, 619, in which the indictment
stated that the grand jurors omitted from the indictment the
lewd and obscene paper alleged to have been sold, because it
would be offensive to the court and improper to be placed on the
records of the court, Chief Justice Redfield said : " Ordinarily
the indictment, in a case like the present, should set forth the
book or publication *in haec verba*, the same as in indictments
for libel or forgery.   This seems to be an acknowledged prin-
ciple in the books.   But even in indictments for forgery, it
may be excused, as if the forged instrument is in the possession
of the opposite party.   So, also, in a case like the present, if
the publication be of so gross a character that spreading it upon
the record will be an offence against decency, it may be excused,
as all the English precedents show.   Some of the precedents
are much like the present, describing the obscene character of
the publication in general terms.   But more generally the
nature of the publication is more specifically described.   But
in both cases the principle of the case is the same.   If the
paper is of a character to offend decency and outrage modesty,
it need not be so spread upon the record as to produce that
effect.   And if it is alleged, in such case, to be a publication
within the general terms in which the offence is defined by
the statute, it is sufficient, which seems to be done in the pres-
ent case.   The degree of particularity, with which the paper
could be described without exposing its grossness, would
depend something upon the nature of that feature, whether it
consisted in the words used or the general description given.
In the former case it could not be more particularly described
than it here is without offending decency."

In *McNair* v. *The People*, 89 Illinois, 441, 443, the question was whether the indictment for printing, having in possession, and giving away an obscene and indecent picture was sufficient under a provision of the Illinois Criminal Code declaring that an indictment should be deemed sufficiently technical and correct, which stated the offence in the terms and language of the statute creating the offence, or so plainly that the nature of the offence could be easily understood. The court, speaking by Mr. Justice Walker, said that " it was necessary to set out the supposed obscene matter in the indictment, unless the obscene publication is in the hands of the defendant, or out of the power of the prosecution, or the matter is too gross and obscene to be spread on the records of the court, either of which facts, if existing, should be averred in the indictment, as an excuse for failing to set out the obscene matter; that whether obscene or not, is a question of law and not of fact; that the question is for the court to determine, and not for the jury." To the same effect are *Fuller* v. *The People*, 92 Illinois, 182, 184; *State* v. *Smith*, 17 R. I. 371, 374–5.

The earlier cases were fully examined by Mr. Justice Blatchford, when he was a judge of the Circuit Court, in *United States* v. *Bennett*, 16 Blatchford, 338, 351, in which it was charged that the defendant " did unlawfully and knowingly deposit, and cause to be deposited, in the mail of the United States, then and there, for mailing and delivery, a certain obscene, lewd, and lascivious book, called ' Cupid's Yokes, or The Binding Forces of Conjugal Life,' which said book is so lewd, obscene, and lascivious, that the same would be offensive to the court here, and improper to be placed upon the records thereof; wherefore, the jurors aforesaid do not set forth the same in this indictment." Speaking for himself and Judges Benedict and Choate, Mr. Justice Blatchford said : " In the present indictment, the defendant had information given to him as to the offence charged, by the date of the mailing, by the title of the book, and by the address on the wrapper. The indictment states the reason for not setting forth the book to be, that it is too obscene and indecent to be set forth. A copy of the book, with a designation of the obscene passages relied on,

could have been obtained before the trial, by asking for a bill of particulars. The defendant was not deprived of the right 'to be informed of the nature and cause of the accusation.' The weight of authority, as well as of reasoning, is in favor of the sufficiency of the present indictment."

The doctrine to be deduced from the American cases is that the constitutional right of the defendant to be informed of the nature and cause of the accusation against him entitles him to insist, at the outset, by demurrer or by motion to quash, and, after verdict, by motion in arrest of judgment, that the indictment shall apprise him of the crime charged with such reasonable certainty that he can make his defence and protect himself after judgment against another prosecution for the same offence; that this right is not infringed by the omission from the indictment of indecent and obscene matter, alleged as not proper to be spread upon the records of the court, provided the crime charged, however general the language used, is yet so described as reasonably to inform the accused of the nature of the charge sought to be established against him; and that, in such case, the accused may apply to the court before the trial is entered upon for a bill of particulars, showing what parts of the paper would be relied on by the prosecution as being obscene, lewd, and lascivious, which motion will be granted or refused, as the court, in the exercise of a sound legal discretion, may find necessary to the ends of justice.

The refusal of the court to arrest the judgment was not erroneous. The defendant knew from the indictment itself what paper or publication would be offered by the government in evidence, and that the prosecution would insist that the pictures of females displayed in that paper were obscene, lewd, and lascivious. It is said that some of the printed matter and pictures in the paper could not possibly be regarded as of that class. That fact is not disclosed by the indictment. Besides, the failure to set out such matters and pictures could not have prejudiced the accused. The paper being offered in evidence, if it appeared that some of the printed matter or some of the pictures were not obscene, lewd, or lascivious, the

jury could have been instructed upon that subject at the instance of either party. But, as we have already said, the defendant did not ask for a bill of particulars nor object to the indictment as insufficient, but made his defence upon the broad ground that the paper that he caused to be deposited in the post office was not obscene, lewd, or lascivious.

We are of opinion that the indictment sufficiently informed the accused of the nature and cause of the accusation against him, and that there was no legal ground for an arrest of the judgment.

3. At the trial below the defendant, by his counsel, asked the court to instruct the jury that he should be acquitted if they entertained a reasonable doubt whether he knew that the paper or publication, referred to in the indictment, was obscene. This request was refused, and an exception was taken to the ruling of the court.

This request for instructions was intended to announce the proposition that no one could be convicted of the offence of having unlawfully, wilfully, and knowingly used the mails for the transmission and delivery of an obscene, lewd, and lascivious publication — although he may have had at the time actual knowledge or notice of its contents — unless he knew or believed that such paper could be properly or justly characterized as obscene, lewd, and lascivious. The statute is not to be so interpreted. The inquiry under the statute is whether the paper charged to have been obscene, lewd, and lascivious was in fact of that character, and if it was of that character and was deposited in the mail by one who knew or had notice at the time of its contents, the offence is complete, although the defendant himself did not regard the paper as one that the statute forbade to be carried in the mails. Congress did not intend that the question as to the character of the paper should depend upon the opinion or belief of the person who, with knowledge or notice of its contents, assumed the responsibility of putting it in the mails of the United States. The evils that Congress sought to remedy would continue and increase in volume if the belief of the accused as to what was obscene, lewd, and lascivious was recognized as the test for

determining whether the statute has been violated. Every one who uses the mails of the United States for carrying papers or publications must take notice of what, in this enlightened age, is meant by decency, purity, and chastity in social life, and what must be deemed obscene, lewd, and lascivious.

4. Another contention of the accused is, that the paper alleged to have been mailed was sent in response to a decoy letter, and, for that reason, no crime was committed. It is only necessary to say that that question has been disposed of adversely to the defendant's contention by *Grimm* v. *United States*, 156 U. S. 604, 611. In that case it was said: "The law was actually violated by the defendant; he placed letters in the post office which conveyed information as to where obscene matter could be obtained, and he placed them there with a view of giving such information to the person who should actually receive those letters, no matter what his name; and the fact that the person who wrote under those assumed names, and received his letters was a government detective, in no manner detracts from his guilt." That doctrine was again announced in *Goode* v. *United States*, 159 U. S. 663, 669, in which case it was said that the fact that "certain prohibited pictures and prints were drawn out of the defendant by a decoy letter written by a government detective, was no defence to an indictment for mailing such prohibited publications."

5. It is also assigned for error that the court left it to the jury to say whether the paper in question was obscene, when it was for the court, as a matter of law, to determine that question. If the court had instructed the jury as matter of law that the paper described in the indictment was obscene, lewd, and lascivious, no error would have been committed; for the paper itself was in evidence; it was of the class excluded from the mails; and there was no dispute as to its contents. It has long been the settled doctrine of this court that the evidence before the jury, if clear and uncontradicted upon any issue made by the parties, presented a question of law, in respect of which the court could, without usurping the func-

tions of the jury, instruct them as to the principles applicable to the case made by such evidence. *Pleasant* v. *Fant*, 22 Wall. 116, 121: *Montclair* v. *Dana*, 107 U. S. 162; *Marshall* v. *Hubbard*, 117 U. S. 415, 419; *Sparf and Hansen* v. *United States*, 156 U. S. 51, 99, 100. Even if we should hold that the court ought to have instructed the jury, as matter of law, that the paper was, within the meaning of the statute, obscene, lewd, and lascivious, it would not follow that the judg-. ment should, for that reason, be reversed, because it is clear that no injury came to the defendant by submitting the question of the character of the paper to the jury. But it is proper to add that it was competent for the court below, in its discretion, and even if it had been inclined to regard the paper as obscene, lewd, and lascivious, to submit to the jury the general question of the nature of the paper, accompanied by instructions indicating the principles or rules by which they should be guided in determining what was an obscene, lewd, or lascivious paper within the contemplation of the statute under which the indictment was framed. That was what the court did when it charged the jury that "the test of obscenity is whether the tendency of the matter is to deprave and corrupt the morals of those whose minds are open to such influence and into whose hands a publication of this sort may fall." "Would it," the court said, "suggest or convey lewd thoughts and lascivious thoughts to the young and inexperienced?" In view of the character of the paper, as an inspection of it will instantly disclose, the test prescribed for the jury was quite as liberal as the defendant had any right to demand.

Other questions are discussed in the elaborate brief filed for the defendant. Some of them do not require notice; others were not sufficiently saved by exceptions, at the proper time, and will not, therefore, be considered or determined.

We find no error of law in the record, and the judgment is

*Affirmed.*

MR. JUSTICE WHITE, with whom concurred MR. JUSTICE SHIRAS, dissenting.

Mr. Justice Shiras and myself are unable to concur in the opinion and judgment of the court. Thinking, as we do, that the consequence of the affirmance of the judgment is to deprive the accused of rights guaranteed to him under the Constitution of the United States, we are impelled to state the reasons for our dissent.

It was claimed at the bar of this court that the indictment was absolutely void, because it failed to set forth an offence against the law of the United States. This contention rested on two propositions: First, that the indictment did not on its face contain a statement of the obscene matter charged to have been illegally mailed; second, because even if the failure to so state was excused by the allegation in the indictment that the matter was too obscene and offensive to be repeated, the indictment was none the less absolutely void, because it failed to give an identifying reference to that which the grand jury found to be obscene.

If these objections be well founded, they are necessarily apparent on the face of the record. They go to the jurisdiction of the court *ratione materiæ.* They consequently demand consideration whether or not they were presented to the court below, or have been regularly assigned for error here. *Montana Railway Co.* v. *Warren,* 137 U. S. 348, 351. The questions, then, are:

*First. Was it necessary to spread the matter alleged to be obscene in full in the indictment, and was the failure to do so excused by the allegation in the indictment that it was too offensive to be put on the record?*

It is unquestioned that the English rule requires, where obscene words are relied upon, that the obscene matter should be set out explicitly in the indictment, and that the averment that is too obscene to be so stated is insufficient to excuse the omission. *Regina* v. *Bradlaugh,* 3 Q. B. Div. 621. But this is not the doctrine of the American courts. At the time *Regina* v. *Bradlaugh* was decided the contrary rule had been announced in several leading cases in this country, and the court in the Bradlaugh case said: "In support of this contention for the crown some American cases were cited. Deci-

sions in the courts of the United States are not binding authorities, and although they may be expressly in point, yet, if they are contrary to our law, they must be disregarded." The cases thus referred to have since been followed by many other American authorities, so that the question may be considered in this country as determined adversely to the English rule. *Commonwealth* v. *Holmes,* 17 Mass. 336; *Commonwealth* v. *Tarbox,* 1 Cush. 66; *People* v. *Girardin,* 1 Michigan, 90; *State* v. *Pennington,* 5 Lea, 506; *McNair* v. *People,* 89 Illinois, 441; *Fuller* v. *People,* 92 Illinois, 182; *State* v. *Brown,* 27 Vermont, 619; *State* v. *Griffin,* 43 Texas, 538; *State* v. *Smith,* 17 R. I. 371; *Commonwealth* v. *Dejardin,* 126 Mass. 46; *Commonwealth* v. *Wright,* 139 Mass. 382; *Commonwealth* v. *McCance,* 164 Mass. 162; *United States* v. *Bennett,* 16 Blatchford, 338. It was with reference to this well settled view that in *Grimm* v. *United States,* 156 U. S. 604, in speaking of sending obscene matter through the mails, the court said (p. 608): "The charge is not of sending obscene matter through the mails, in which case some description might be necessary, both for identification of the offence, and to enable the court to determine whether the matter was obscene, and, therefore, non-mailable. Even in such cases it held that it is unnecessary to spread the obscene matter in all its filthiness upon the record; it is enough to so far describe it that its obnoxious character may be discerned."

*Second. Where the obscene matter is not spread upon the face of the indictment, and is excused under the averment that it would be offensive to morality to do so, is the indictment valid where it gives no specific reference identifying the matter found by the grand jury to be obscene, thus rendering it impossible to determine upon what the grand jury based its presentment?*

In considering this question it must be borne in mind that imprisonment at hard labor in the penitentiary is the penalty which may be imposed for sending obscene matter through the mails; hence the offence is an infamous one. *Mackin* v. *United States,* 117 U. S. 348; *Ex parte Wilson,* 114 U. S. 417; *In re Claasen,* 140 U. S. 200. It must also be considered that, being an infamous offence, the prosecution can, under the Fifth

Amendment to the Constitution, only be by indictment.   The
necessity for identifying references in the indictment, to the
obscene matter upon which the grand jury makes its finding,
is an essential part of the rule, dispensing with the obligation
of stating the obscene matter, in so many words, in the indict-
ment.   The reason upon which the English rule rests is that
spreading in full the obscene matter is essential to protect the
accused in his rights, to enable him to move to quash, or in
arrest of judgment, or to present on review by error the valid-
ity or invalidity of the indictment.   The American rule is based
upon the reason that such spreading upon the record is not essen-
tial to protect the rights of the accused, because the obscene
matter, passed on by the grand jury, can be so identified by a
reference to it in the indictment, as to enable it to be, by bill of
particulars or otherwise, readily supplied for all the purposes
of defence; hence, the omission deprives the accused of no
substantial right, whilst subserving the ends of public morality
and decency.

The authorities make this clear. · Thus in *Grimm* v. *United
States, ub. sup.*, the court said: "It is enough to so far describe
it [obscene matter] that its obnoxious character may be dis-
cerned."   And the reason which exacted this reference was
declared to be "both for identification· of the offence and to
enable the court to determine whether the matter was obscene,
and, therefore, non-mailable."   In *Commonwealth* v. *McCance,
supra*, the indictment charged the accused with "selling a cer-
tain book then and there called 'The Decameron of Boccaccio,'
and which said book upon the title page thereof was then and
there of the tenor following, (describing the title page,)  .  .  .
which said book then and there contained among other things
certain obscene, indecent and impure language,  .  .  .  which
said book is so lewd, obscene, indecent and impure that the
same would be offensive to the court and improper to be placed
upon the records thereof."   The court, whilst fully recognizing
the rule which renders it unnecessary to spread obscene matter
in the indictment, also applied the principle which holds that
where such matter is not put upon the record there must be an
identifying reference in the indictment so that it may be deter-

mined from the face thereof what was the particular matter upon which the grand jury acted. In consequence of so holding the judgment was reversed and the verdict set aside. See also *Babcock* v. *United States*, 34 Fed. Rep. 873.

Indeed, the correctness of the ruling in *Commonwealth* v. *McCance* we think results from the very nature of things. It being unquestionable that a grand jury must find an indictment in order that the prosecution be valid, how can it be said that there has been such a presentment, when on the very face of the record it is absolutely impossible to determine what matter the grand jury charged to be obscene? To say that it can be supplied by a bill of particulars or otherwise is a misconception, for it becomes impossible to supply that which does not legally exist. The Constitution requiring that the grand jury should find the indictment, neither the court, the prosecuting officer nor any one else have power to create the necessary averments to make that an indictment, which otherwise would be no indictment at all. This case illustrates the danger of departing from constitutional safeguards. The general rule requires an indictment to be specific. *Stephens* v. *State*, Wright (Ohio), 73; *Commonwealth* v. *Gillespie*, 7 S. & R. 469; *Commonwealth* v. *Stow*, 1 Mass. 54; *Commonwealth* v. *Bailey*, 1 Mass. 62; *Commonwealth* v. *Sweney*, 10 S. & R. 173; *Commonwealth* v. *Wright*, 1 Cush. 46; *Commonwealth* v. *Tarbox*, 1 Cush. 66; *Commonwealth* v. *Houghton*, 8 Mass. 107; *King* v. *Beere*, 12 Mod. 219; *State* v. *Parker*, 1 D. Chipman (Vermont), 298. See, also, *Commonwealth* v. *Stevens*, 1 Mass. 203. To this rule there has been evolved an exception. This exception, as we have said, is that where the publication or mailing of obscene matter is charged by a grand jury, such matter need not be stated in the indictment, provided in that instrument it be referred to and identified. Under the ruling now announced, it seems to us that the exception is made to destroy the rule, and that an indictment is held to be valid even although it makes no reference whatever to the matter relied on to show guilt. Thus the qualification as to the identifying reference by which alone the exception is justified disappears, and the

result logically leads to the recognition of the right of a grand jury to present without stating or referring to the facts upon which its presentment is made, and also concedes the power of a prosecuting officer to supply matter in an indictment, and thus make that which is absolutely void a valid instrument. The wisdom of the rule announced in *Commonwealth* v. *McCance*, was well illustrated by the indictment presented in that case, as it is by the alleged indictment under consideration here. Will it be said that an indictment which charged that an accused published obscene matter contained in twenty volumes of books called the Encyclopædia Britannica or Americana, giving the title page, and followed by the statement that a more minute description would be offensive to morality, would be adequate? And yet what difference would exist, except in degree, between such an indictment and the one here held to be valid? Nor is it logical to say that as an accused has no right to know the secrets of a grand jury room, therefore he is not entitled to be informed as to the matter upon which the grand jury bases its presentment. The Constitution forbids in a certain class of cases prosecution except by indictment, and, therefore, to the extent that such knowledge is essential to constitute a valid instrument, the accused is entitled, under the Constitution, to know the secrets of the grand jury room.

If these views as to the necessity of an identifying reference, supported, as we think they are, by the statement of the court in *Grimm* v. *United States*, and the ruling of the Supreme Court of Massachusetts in *Commonwealth* v. *McCance*, be sound, their application to this case is clear.

The language of the indictment, whilst it identifies the paper as an entirety, fails in any degree to designate what matter therein, whether words or picture, was found to be obscene by the grand jury, and upon which their presentment was made. It is impossible from the mere description of the title page of the paper, and the averment that it contains twelve pages and was published on a particular day, to in any way ascertain what part, whether pictures or print, contained in the twelve pages, was acted on by the grand

jury. In other words, using the identification of the paper given by the indictment, the mind looks in vain for any reference to the particular things, found in the paper, which were considered as within the statute.

Nor can it be correctly said that the alleged indictment under consideration charged that each and every part of the newspaper was obscene, and therefore the grand jury found the whole paper was of that character, thus identifying the whole. It will be seen, from an examination of the indictment, that its language expressly charges that only portions of the publication to which it refers are obscene. The paper to which the indictment relates is twelve pages of the ordinary size of illustrated papers, with a title page as described in the indictment. Three of its pages are devoted to advertisements; all the other pages, except the sixth and seventh, contained pictures and printed matter. The excepted pages contain only pictures, which are blackened over in part so as to seemingly conceal them, and yet leaving enough unblackened to suggest the subjects which they depict. The eighth page has similar pictures along with the printed matter. After describing the title page of the paper and the picture thereon, the indictment says "and the said paper consists of twelve pages, minute description of which with the pictures therein and thereon would be offensive to the court and improper to spread upon the records of the court, because of their obscene, lewd and indecent matters." This is not an allegation that the entire contents of the publication were obscene, because if that was intended there would be no necessity of referring to a "minute description" of the paper as essential to disclose the obscene matter. It can, reasonably, only bear the construction that the publication was claimed to be obscene because of "obscene, lewd and indecent matters" appearing somewhere in the publication. It is evident, therefore, that particular matter contained in the twelve pages was contemplated, and that the indictment furnishes no means for ascertaining in what this matter consists, by reference or otherwise.

It is clear that the defences here advanced, if they be well founded, assert not that the indictment is formally defective,

but that it fails on its face to state an offence. The defect is therefore not one of form under Rev. Stat. § 1025. On both principle and authority such error goes to the existence of the indictment, and consequently is essentially one of substance. *Ex parte Bain*, 121 U. S. 1. This is especially applicable to a case where, by the Constitution, the accused cannot be prosecuted except on presentment by a grand jury. That the mere silence or acquiescence of the accused cannot deprive him of his constitutional right is obvious. In *Hopt* v. *Utah*, 110 U S. 574, speaking through Mr. Justice Harlan, the court said (p. 579):

" We are of opinion that it was not within the power of the accused or his counsel to dispense with the statutory requirements as to his personal presence at the trial. The argument to the contrary necessarily proceeds upon the ground that he alone is concerned as to the mode by which he may be deprived of his life or liberty, and that the chief object of the prosecution is to punish him for the crime charged. But this is a mistaken view as well of the relations which the accused holds to the public as of the end of human punishment. The natural life, says Blackstone, ' cannot legally be disposed of or destroyed by any individual, neither by the person himself, nor by any other of his fellow-creatures, merely upon their own authority.' (1 Bl. Com. 144.) The public has an interest in his life and liberty. Neither can be lawfully taken except in the mode prescribed by law. That which the law makes essential in proceedings involving the deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused, much less by his mere failure, when on trial and in custody, to object to unauthorized methods. The great end of punishment is not the expiation or atonement of the offence committed, but the prevention of future offences of the same kind. (4 Bl. Com. 11.) Such being the relation which the citizen holds to the public, and the object of punishment for public wrongs, the legislature has deemed it essential to the protection of one whose life or liberty is involved in a prosecution for felony, that he shall be personally present at the

trial, that is, at every stage of the trial when his substantial rights may be affected by the proceedings against him. If he be deprived of his life or liberty without being so present, such deprivation would be without that due process of law required by the Constitution."

Doubtless it was like reasoning which caused the court in *Commonwealth* v. *Maher*, 16 Pick. 120, to refuse, in a capital case, to allow an amendment as to a matter of substance even with the consent of the prisoner, and which also made the court in *Commonwealth* v. *McCance* set aside the verdict against the accused. In accord with this view is the doctrine which denies the power, even by statute, to authorize amendments which substantially change an indictment. The result of the authorities to this effect is thus stated by Bishop: "If, in a case where the Constitution gives the defendant the right to be tried by an indictment, the legislature should undertake to authorize such amendments as leave the indictment no longer the finding of the grand jury, an amendment under it would oust the jurisdiction of the court, and the cause must stop. Such is the substance of the authorities, though the doctrine is not always stated in these words." (1 Bish. New Crim. Proc. § 97, p. 55, and authorities there cited; Whart. Crim. Pl. & Prac. § 90, sub. 2, and authorities there cited.) The legislative authority not being competent to authorize an amendment so as to convert a void into a valid indictment, surely a prosecuting officer can have no such power.

The indictment, being, as we think, fatally defective in failing to state an offence, which defect could not be supplied in the court below, and cannot be so supplied here without converting an absolutely void into a valid indictment, and thus violating the Constitution which secures the accused an immunity from prosecution except upon presentment by a grand jury, the verdict and judgment should be reversed.