**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Samuel R. HOCHMAN, Defendant-Appellant.**

**No. 12858.**

United States Court of Appeals
Seventh Circuit.

April 25, 1960.

Rehearing Denied June 7, 1960.

Morton Gollin, Herbert R. Manger, Milwaukee, Wis., for appellant.

Edward G. Minor, U. S. Atty., Matthew M. Corry, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

In the district court, Samuel R. Hochman, defendant, was found guilty by the verdict of a jury of a violation of 18 U.S.C.A. § 1462, as charged in counts I and III of an indictment, and judgment was entered for his imprisonment and a fine of $1,000. He was found not guilty on count II.

Count I charged that defendant on or about May 13, 1957 at the city of Milwaukee, in the eastern district of Wisconsin, "did knowingly take from a common carrier, to-wit, the ABC Freight Forwarding Company, Milwaukee, Wisconsin, five (5) copies of an obscene publication called "The Sex Factory" by H. Tennob, which were transported in interstate commerce from New York City, New York, to Milwaukee, Wisconsin * * *." In count III the same charge was made as to a publication called "Virgins Come High".

On this appeal, the errors assigned by defendant relate to the alleged failure

of the government's proof to establish that the defendant *knowingly* took two books (exhibits 1 and 3) from a common carrier, and to the exclusion of certain evidence.

Exhibits 1 and 3 are books bearing the titles "The Sex Factory" and "Virgins Come High". Defendant's counsel upon oral argument in this court admitted for the purpose of this case that these two books are obscene.

Chronologically arranged, the following facts appeared at the trial:

Defendant operated a novelty and book business at 733 West Wisconsin avenue, in Milwaukee. He is a university graduate. In accordance with custom, a salesman for the Padell Book Shop in New York City called on defendant and attempted to sell him books by showing covers torn off books. At that time he did not buy any books, but the salesman left his price list which defendant looked over. In May, 1957, defendant went to New York and, while there, he went to the Padell Book Shop and talked to Padell, to whom he gave his credit references. Padell told him to look around, and defendant, from a list that he had already made out, marked down on an order the books that he wanted. He already knew what he was going to buy. The books he ordered were shipped to him and received May 31, 1957 about 3 P.M., when he signed a receipt therefor. Defendant states that

> "at about 15 minutes after the deliveryman left the shipment on the floor, three gentlemen came in and introduced themselves as FBI men, saying that they were informed that I was receiving an obscene book, 'The Sex Factory'. With my permission they opened the carton. It contained 101 books. The men took the entire carton of books. They returned 65 or 66 of the books, 13 titles and I saw them. Some of these 13 titles

that were returned looked even worse than 'The Sex Factory' and 'Virgins Come High'."

Defendant testified he had never read these two books.

Max Padell, a witness for the government testified that on the occasion of defendant's visit in May, 1957, he let defendant select his own books. Padell could see Hochman checking the titles of the books for about 15 minutes. He was checking by glancing through them. Defendant riffled the pages, although Padell did not actually see him read the books.

Julian Clark, an FBI agent, testified that the carton when opened in defendant's store was found to contain books with 20 different titles.[1]

18 U.S.C.A. § 1462 provides:

> "Whoever * * * knowingly deposits with any express company or other common carrier, for carriage in interstate or foreign commerce—
>
> "(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character;
>
> * * * * * * *
>
> "(c) * * * or
>
> "Whoever knowingly takes from such express company or other common carrier any matter or thing the depositing of which for carriage is herein made unlawful—
>
> "Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

It is defendant's contention that, even if the two books are regarded as obscene, he did not knowingly take the same from the express company, and, therefore, the judgment should be reversed and he should be discharged. The meaning of this contention is narrowed by his attorney's admission, for the pur-

[1]. "Silk Stockings," "Lash," "Flossie," "Spankee," "Straps," "Sadist," "Woman and Her Master," *"Virgins Come High,"* *"Sex Factory,"* "Celesti," "Wheel of Violence," "Come-on Girl," "Justine," "French Pornographer," "History of Prostitution," "Bandit in High Heels," "Mistress in Satin," "Exotique #13," "Exotique #14," and "Bubbles Darlene."

pose of this case, that the books are obscene. Moreover, it is not denied that these books were a part of a shipment moving in interstate commerce, that delivery was made of the carton and its contents to him and that he accepted said delivery. As we understand the contention of defendant's counsel about lack of knowledge, it is that defendant did not know that the two books "Sex Factory" and "Virgins Come High" were, as a matter of fact, obscene. We are not convinced by this contention. These books were among those selected by him before he went to New York City and they were scrutinized by him in the Padell Book Shop to the extent that he wished to inspect them. Whether it was a cursory examination, or whether it was more thorough, it was such an examination as satisfied him that he was buying pornographic merchandise which he could sell at a big profit. Defendant testified that these books, which were of the soft paperback variety, printed upon a cheap stock of paper, he bought at $1.50 and intended to sell at $3 each. Not only are the books admittedly obscene, but they are so blatantly so that their obscenity screams forth from the picture on the cover, and others interspersed through the interior of the books, and the pornography in the printed language in page after page is so overwhelming that it is incredible that defendant did not know what he was buying. At least, we cannot say that the jury was not justified in drawing a reasonable inference that defendant knew the obscene nature of these books when he bought them and had them delivered to his store.

The district court refused to permit defendant to introduce evidence to show that books similar to those involved in this case were being sold openly in the city of Milwaukee and that a book entitled "Lady Chatterley's Lover" was the best seller in Milwaukee at the time of the trial. Counsel says that this evidence was designed to show contemporary community standards.

The trial court did not err in its rulings in this respect. Obscenity of the publications here involved having been admitted in this court for the purpose of this case, the existence of these alleged standards of obscenity is irrelevant.

For the reasons herein set forth, the judgment of the district court is affirmed.

Affirmed.

HASTINGS, Chief Judge (concurring).

Defendant's concession, during oral argument, that for the purpose of this appeal it may be admitted that the two books under scrutiny (Exhibits 1 and 3) were obscene, serves to eliminate the issue of "contemporary community standards." With commendable candor counsel announced that this was done in order not to obscure the primary question of the element of *scienter*. In this context we do not treat this concession as one of guilty knowledge on the part of defendant within the terms of 18 U.S.C. A. § 1462.

We are left, therefore, with the important question of whether defendant, at the time he took these obscene books from the carrier in interstate commerce, *knew* that the books were obscene. As in all cases involving guilty knowledge, the determination of a person's state of mind under a given set of circumstances is a difficult and close question. We are here neither dealing with the validity of a statute or an ordinance,[1] nor are we concerned with determining the character of the subject matter of the publications in question.[2] We are passing on

1. Smith v. People of State of California, 1959, 361 U.S. 147, 80 S.Ct. 215, 4 L. Ed.2d 205; Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498.

2. Rosen v. United States, 1896, 161 U.S. 29, 16 S.Ct. 434, 40 L.Ed. 606; United States v. Padell, 2 Cir., 1958, 262 F.2d 357, certiorari denied 359 U.S. 942, 79 S.Ct. 723, 3 L.Ed.2d 676.

In Padell, the court aptly refers to such literary trash as "dreary pornography."

a question of sufficiency of evidence to take a case to a jury for its determination of the issue of intent.

It is well settled that jury verdicts cannot be based on surmise and speculation; that conjecture and suspicion cannot take over where proof fails; and that verdicts based upon such nebulous grounds cannot be permitted to stand. These principles need no supporting citations. The question then arises whether the relevant evidence in this case on the issue of guilty knowledge is so minimal in character that we must say the jury was reduced to speculation and conjecture in arriving at its verdict of guilt.

The applicable rule is stated by the Supreme Court of the United States in Morissette v. United States, 1952, 342 U.S. 246, at page 274, 72 S.Ct. 240, at page 255, 96 L.Ed. 288, where Mr. Justice Jackson stated: "Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury." In that case the Court reversed a conviction because the trial court invaded the province of the jury through erroneous instructions on this issue.

In the case at bar, it is significant that defendant makes no charge that the jury was improperly instructed. Indeed, an examination of the instructions given by the trial court on the issue of intent demonstrates that the jury was fully and correctly instructed on this question.

A review of the record in this case, "taking the view most favorable to the Government," satisfies me that there was sufficient testimony from which the jury might properly conclude that defendant was aware of the contents of the books. Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680. The fact that the question of proof might have been close and that the jury could have determined it in favor of defendant, as it did on Count II, is only indicative that the evidence was of such character as to require its evaluation by the jury. It is not our appellate function to substitute our judgment for that of the jury under such circumstances.

We are not presented with a record here "that is entirely lacking in evidence to support any of the charges," as was determined by the Supreme Court in Thompson v. City of Louisville, 80 S.Ct. 624.

We are concerned neither with a constitutional question of censorship nor with the power of the Government to define obscenity. Within the limited scope of our review of the narrow factual question before us, I agree with the majority opinion that the judgment of the district court must be affirmed.