**UNITED STATES of America**
v.
**Francis J. HILDERBRAND.**
**No. KC-CR-52.**

United States District Court
D. Kansas.

July 1, 1960.

---

**284**

&#9758;38(4)

Wilbur G. Leonard, U. S. Atty., Topeka, Kan., for the United States.

Paul E. Wilson, Lawrence, Kan., for defendant.

ARTHUR J. STANLEY, Jr., District Judge.

The defendant Francis J. Hilderbrand has filed his motion under 28 U.S.C. § 2255, requesting leave to withdraw his plea of guilty made herein and that the judgment of conviction and sentence under which he is presently confined be vacated and set aside. The defendant was indicted in the Northern Division of the Western District of Washington for the offense of first degree murder. Pursuant to Rule 20 of the Federal Rules of Criminal Procedure, 18 U.S.C., the case was transferred to this court, where on June 24, 1959, the defendant entered a plea of guilty to the offense of second degree murder. The Court sentenced the defendant to a term of twenty years, which sentence was reduced to fifteen years on July 20, 1959.

In this present motion, the defendant has challenged the jurisdiction of the court on two grounds: (1) The indictment fails to allege a violation of the laws of the United States; and (2) the place of the alleged offense is not Indian Country within the meaning of the Acts of Congress.

The defendant was convicted under an indictment that was drawn in the language of the statute, as follows:

"That on or about June 15, 1952, in the Northern Division of the Western District of Washington, within the Indian Country and within the special maritime and territorial jurisdiction of the United States, to wit, within the Lummi Indian Reservation, Francis J. Hilderbrand, an Indian, did willfully, deliberately, maliciously and with premeditation stab and murder Robert J. Kelly, an Indian, with a knife.

"All in violation of Title 18, U. S.C., § 1111, § 1152 and § 1153."

The defendant claims that the indictment is fraught with uncertainty, indefiniteness and ambiguity because the word "Indian" when used alone in the indictment to describe defendant and his victim has no meaning. He claims that other circumstances, such as tribal relations and wardship, must be expressly alleged to lay jurisdiction in the federal courts.

Rule 7(c) of the Rules of Criminal Procedure provides that:

"The indictment * * * shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. * * * It need not contain * * * any other matter not necessary to such statement. * * * "

The test for the sufficiency of an indictment was clearly stated in Hagner v. United States, 1932, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861:

"The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' Cochran and Sayre v. United States, 1894, 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704; Rosen v. United States, 1895, 161 U.S. 29, 34, 16 S. Ct. 434, 480, 40 L.Ed. 606."

This language from the Hagner case was adopted by the Supreme Court in United States v. Debrow, 1953, 346 U.S. 374, 74 S.Ct. 113, 115, 98 L.Ed. 94, wherein the Court went on to say:

"The charges of the indictments followed substantially the wording of the statute, which embodies all the elements of the crime, and such charges clearly informed the defendants of that with which they were accused, so as to enable them to prepare their defense and to plead the judgment in bar of any further prosecutions for the same offense. It is inconceivable to us how the defendants could possibly be misled as to the offense with which they stood charged. The sufficiency of the indictment is not a question of whether it could have been more definite and certain. If the defendants wanted more definite information * * * they could have obtained it by requesting a bill of particulars."

Although the word "Indian" may have more than one meaning, there can be no doubt but that the defendant was sufficiently apprised of the charge against him. Being couched in the very words which confer jurisdiction upon the court, the indictment was a clear allegation of a violation of the laws of the United States. Whether or not defendant is an Indian is an issue not before the court at this time.

Defendant's second challenge to the court's jurisdiction is based upon the claim that the alleged offense did not occur in the "Indian Country." Defendant has raised this claim twice before and two courts have rejected it. In Hilderbrand v. United States, 9 Cir., 1958, 261 F.2d 354, 355, it is reported at page 355 that this same defendant had, in a proceeding under § 2255, "alleged that the federal court lacked jurisdiction because the crime had been committed on property which had been transferred out of Indian ownership, and thus out of federal jurisdiction, to the Catholic Church." The Washington District Court had denied the motion and the Court of Appeals disposed of the case on other grounds.

The defendant also filed a petition for writ of habeas corpus in this District on November 2, 1956, in which he alleged that the federal court did not have jurisdiction because the alleged offense occurred on land belonging to the Catholic Church and no longer a part of the Lummi Indian Reservation. In its order dismissing the petition, the Court found, "as a matter of law, that the place where the offense was committed was 'Indian Country' as defined by Section 1151, U.S.C., Title 18, and that the United States had exclusive jurisdiction over such territory by virtue of said Section 1151, and Sections 1152 and 1153, U.S.C., Title 18."

■ Defendant's present contention is that under the law in 1922 when a

one-acre plot, on which he alleges the incident occurred, was deeded to the Catholic Diocese of Nisqually the right of Indian occupancy terminated, and the land was withdrawn from the Indian Country. He claims that subsequent Congressional acts, or decisions of the courts, could not divest the jurisdiction of the State of Washington without the state's consent. Assuming without deciding that the offense was committed on a plot of land within the boundaries of the Lummi Reservation, but actually belonging to a church, defendant is in error in his assertion that the United States relinquished jurisdiction over crimes committed thereon by Indians. In 1922 the controlling decision would have been United States v. Celestine, 1909, 215 U.S. 278, 30 S.Ct. 93, 54 L.Ed. 195, a decision written by Mr. Justice Brewer who probably was as well versed in Indian law as any justice who ever sat on the Supreme Court. In Celestine, the defendant alleged that both he and the woman he was charged with killing had received patents for their allotments and that the incident had occurred on the woman's land. The defendant was charged under what was known as the Seven Major Crimes Act, 23 Stat. 385 (1885), in which the pertinent language was, " * * * within the limits of any Indian reservation * * *." This law had been passed in reaction to Ex Parte Crow Dog, 1883, 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030, which had created a jurisdictional void. See United States v. Kagama, 1886, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228.

The Celestine case held that the United States had retained jurisdiction over crimes committed within the reservation even though committed on land to which an individual Indian held title. Such land remained within the reservation until Congress excluded it therefrom.

"By the second clause of § 3, Art. IV, of the Constitution, to Congress, and to it alone, is given 'power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States.' From an early

time in the history of the Government it has exercised this power, and has also been legislating concerning Indians occupying such territory." [215 U.S. 278, 30 S.Ct. 94]

The court also discussed the difference between a reservation and "Indian Country."

"But the word 'reservation' has a different meaning, for while the body of land described in the section quoted as 'Indian country' was a reservation, yet a reservation is not necessarily 'Indian country.' The word is used in the land law to describe any body of land, large or small, which Congress has reserved from sale for any purpose. It may be a military reservation, or an Indian reservation, or, indeed, one for any purpose for which Congress has authority to provide, and when Congress has once established a reservation all tracts included within it remain a part of the reservation until separated therefrom by Congress."

Defendant has cited the cases of Clairmont v. United States, 1912, 225 U.S. 551, 32 S.Ct. 787, 56 L.Ed. 1201 and Ex parte Tilden, D.C.D.Idaho 1914, 218 F. 920 in support of his theory that the United States relinquished jurisdiction over this piece of land in 1922. The Clairmont case is not in point for exactly the reason discussed in Celestine; that Indian reservation and Indian Country are not synonymous. Clairmont involved the law which prohibited the introduction of liquor into the Indian country. The court was not construing a statute which used the different term, Indian reservation. The district court in the Tilden case relied upon the authority of Clairmont in preference to Celestine. Tilden involved a murder within the Nez Perce reservation, but at a railway station, and upon the railroad right of way. Because the defendant in Clairmont had been riding on a train passing through a reservation, the court in Tilden thought that the facts were closer to the Clairmont case than to the Celestine case.

It seems to this Court that the phrase "within the limits of any Indian reservation" should be given the meaning accorded to it by the Supreme Court in Celestine. The language is broad and inclusive. Although the Catholic Church may have taken title to this one acre plot of land, it still remained within the limits of the Lummi reservation.

Defendant has made no contention that the present definition in 18 U.S.C. § 1151 would not cover the offense with which he was charged. The statute now reads, "* * * all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation * * *".

The motion of the defendant is denied.

Counsel will prepare and submit an appropriate order.