## MAGON et al. v. UNITED STATES.

### (Circuit Court of Appeals, Ninth Circuit. February 4, 1918.)

### No. 2901.

1. POST OFFICE ⬦31—OFFENSES—DEFINITION—"INDECENT."

Under Criminal Code (Act March 4, 1909, c. 321) § 211, 35 Stat. 1129, as amended by Act March 4, 1911, c. 241, § 2, 36 Stat. 1339 (Comp. St. 1916, § 10381), declaring that every publication of an indecent character shall be nonmailable, and denouncing the offense of depositing or causing to be deposited, for mailing or delivery, anything declared by the section to be nonmailable, and further declaring that the term "indecent" shall include matter of a character tending to incite murder or assassination, the definition of the word "indecent" as including matter of a character to incite murder or assassination is sufficiently definite to sustain a prosecution for depositing such matter in the mails, the question whether the matter so deposited was indecent, as having that tendency, being for the jury to determine just as the question whether matter is obscene is for the jury.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Indecent.]

2. POST OFFICE ⬦50—TRIAL—PROVINCE OF COURT AND JURY.

In a prosecution for violating Criminal Code, § 211, as amended in 1911, by depositing in the mails matter of an indecent character, the question first is for the court whether the language can have the tendency attributed to it, and then for the jury to determine whether it has such tendency in fact.

3. POST OFFICE ⬦48(2)—OFFENSES—INDICTMENT.

An indictment alleging that defendants deposited in the post office newspapers of an indecent character, in violation of Criminal Code, § 211, as amended in 1911, to be transmitted by the post office establishment to many and divers persons, the names of such persons being unknown to the grand jurors, is sufficient, though not alleging that the newspapers were addressed to any particular persons.

4. POST OFFICE ⬦48(2)—OFFENSES—INDICTMENT.

An indictment charging a violation of Criminal Code, § 211, as amended in 1911, which averred that the newspaper deposited in the post office contained certain indecent language, and was a publication of a character to incite in the minds of persons reading the same murder and assassination, and then set forth the objectionable language in full, sufficiently alleged that the newspaper was nonmailable.

5. POST OFFICE ⬦48(2)—OFFENSES—INDICTMENT.

An indictment alleging that defendants knowingly, willfully, unlawfully, and feloniously deposited in the post office certain indecent newspa-

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pers, in violation of Criminal Code, § 211, as amended in 1911, is sufficient, without a specific allegation that defendants knew that the papers contained indecent matter or comprehended its import.

6. POST OFFICE ⬅═31—TRIAL—DEFENSES.

 Where, in a prosecution for violation of Criminal Code, § 211, as amended in 1911, by depositing in the post office newspapers of an indecent character, as tending to incite murder or assassination, it was unnecessary for the government to show any specific intent on the part of defendants in writing, publishing, or mailing the newspapers, lack of such intent could not be shown as a defense.

7. POST OFFICE ⬅═31—OFFENSES—SPECIFIC INTENT.

 Where defendants, who deposited in the post office newspapers alleged to be indecent, as having a tendency to incite murder or assassination, both were familiar with the articles, it is not necessary, in prosecution for violation of Criminal Code, § 211, as amended in 1911, declaring such publications to be nonmailable, to show any specific intent on the part of defendants to incite murder or assassination.

8. CRIMINAL LAW ⬅═1121(1), 1122(5)—REVIEW—MATTERS REVIEWABLE.

 Where neither the testimony nor the instructions given by the court below were in the record, questions of the sufficiency of the evidence or the propriety of the refusal of requested instructions by defendants cannot be reviewed.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge.

Enrique Flores Magon and Ricardo Flores Magon were convicted of violating Criminal Code, § 211, as amended in 1911, by depositing in the post office newspapers of an indecent character, as tending to incite murder and assassination, and they bring error. Affirmed.

J. H. Ryckman, of Los Angeles, Cal., for plaintiffs in error.

Albert Schoonover, U. S. Atty., and Clyde R. Moody, Asst. U. S. Atty., both of Los Angeles, Cal.

Before GILBERT and HUNT, Circuit Judges, and DOOLING, District Judge.

DOOLING, District Judge. [1, 2] The defendants were convicted of the offense of depositing in the post office at Los Angeles, Cal., to be transmitted to divers persons in the United States and in Mexico, a certain newspaper, which was a publication of an indecent character, as tending to incite murder and assassination. The indictment is based upon section 211 of the Criminal Code, as amended in 1911; the portions of the section material here being the following:

"Every obscene, lewd, or lascivious, and every filthy, book, pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character, * * * is hereby declared to be nonmailable. * * * Whoever shall knowingly deposit, or cause to be deposited for mailing or delivery, anything declared by this section to be nonmailable, * * * shall be fined not more than five thousand dollars, or imprisoned not more than five years, or both. * * * And the term 'indecent' within the intendment of this section shall include matter of a character tending to incite * * * murder, or assassination." Comp. St. 1916, § 10381.

The last sentence is the amendment of 1911. Upon the meaning therein assigned to the word "indecent" this prosecution is based. De-

fendants contend with great earnestness that this definition is void for uncertainty, in that it leaves it to the jury to say what words upon paper tend to incite murder or assassination. But, while this particular portion of the statute is new, the statute itself is an old one, and has been many times considered by the courts. In construing the word "obscene," as used therein, it has been uniformly held that, if the matter complained of were of such a nature as would tend to corrupt the morals of those whose minds are open to such influences by arousing or implanting in such minds lewd or lascivious thoughts or desires, it is within the prohibition of the statute, and that whether or not it had such tendency was a question for the jury. Rosen v. United States, 161 U. S. 29, 16 Sup. Ct. 434, 480, 40 L. Ed. 606; Knowles v. United States, 170 Fed. 409, 95 C. C. A. 579; United States v. Bennett, Fed. Cas. No. 14,571; McFadden v. United States, 165 Fed. 51, 91 C. C. A. 89; Demolli v. United States, 144 Fed. 363, 75 C. C. A. 365; United States v. Musgrave (D. C.) 160 Fed. 700; United States v. Harmon (D. C.) 45 Fed. 414; United States v. Clarke (D. C.) 38 Fed. 732.

It is no more difficult for a jury to determine whether certain language has a tendency to incite murder or assassination than to determine whether certain other language has a tendency to corrupt the morals of those whose minds are open to such influences, and while the meaning assigned to the word "indecent" in the statute by the amendment of 1911 is new, the method of its application is as old as the statute itself. It is for the court to determine in the first instance whether any given language can have the tendency attributed to it, and for the jury to determine whether it has such tendency in fact. A defendant charged with sending indecent matter through the mails is therefore, under the amended statute, in the same position that a defendant charged with sending obscene matter has always been in, and there is no more reason for holding the statute void as to the one than as to the other.

[3] It is further claimed that the indictment is invalid because the newspapers deposited in the post office are not described as having been addressed to any persons. But it is averred that they were so deposited "to be transmitted by the post office establishment to many and divers persons; the names of which divers persons are unknown to the grand jurors." This is sufficient. Durland v. United States, 161 U. S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709.

[4] The indictment is also challenged because it contains no distinct averment that the newspaper was nonmailable. But it avers that the newspaper "contained certain indecent, vile, and filthy substance and language, and was a publication of an indecent character, and which said indecent, vile, and filthy substance and language * * * was of a character to incite, in the minds of persons reading the same, murder and assassination." The objectionable language is then set out in full. These averments show the nonmailable character of the publication, and when that appears the additional particular averment that it was so nonmailable is not required.

[5] It is also claimed that the indictment is insufficient because it

does not appear therefrom that defendants knew that the papers deposited by them contained indecent matter, or knew its import, or that it was of a character tending to incite murder or assassination. The indictment, however, states that the defendants "knowingly, willfully, unlawfully, and feloniously deposited" the matter in question. Indictments for similar offenses in identical language were upheld by the Supreme Court, against the very contentions that are here advanced, in Price v. United States, 165 U. S. 311, 17 Sup. Ct. 366, 41 L. Ed. 727, and Rosen v. United States, 161 U. S. 29, 16 Sup. Ct. 434, 480, 40 L. Ed. 606.

[6] The defendant Enrique Flores Magon, while testifying, was asked by his counsel the following question:

"When you deposited copies of your newspaper containing the alleged nonmailable matter set out in the indictment, did you thereby intend to incite murder or assassination?"

And his codefendant was asked:

"Did you intend, or was it your purpose, in writing for publication the alleged nonmailable matter set out in the indictment, to incite murder or assassination?"

To each of these questions the government objected, and the objections were sustained. One of the defendants wrote the articles, and the other published and mailed them. Both defendants were familiar with them, and if they did in fact have a tendency to incite murder or assassination, as it was not necessary for the government to show any specific intent on the part of the defendants in writing, publishing, or mailing them, so the lack of such intent could not be shown as a defense.

[7] The defendants requested the court to instruct the jury that, if they were not satisfied beyond a reasonable doubt that defendants knew that the objectionable matter was of a character tending to incite murder or assassination, it was their duty to acquit. But the government was not required to prove that defendants knew that the objectionable matter, with which they were confessedly familiar, was of a character tending to incite murder or assassination. In Rosen v. United States, 161 U. S. 29, 16 Sup. Ct. 434, 480, 40 L. Ed. 606, an instruction had been requested that the jury should acquit if they entertained a reasonable doubt whether defendants knew that the paper referred to in the indictment was obscene. This request was refused, and the Supreme Court, speaking of such refusal, says:

"This request for instructions was intended to announce the proposition that no one could be convicted of the offense of having unlawfully, willfully, and knowingly used the mails for the transmission and delivery of an obscene, lewd, and lascivious publication—although he may have had at the time actual knowledge or notice of its contents—unless he knew or believed that such paper could be properly or justly characterized as obscene, lewd, and lascivious. The statute is not to be so interpreted. The inquiry under the statute is whether the paper charged to have been obscene, lewd, or lascivious was in fact of that character, and if it was of that character and was deposited in the mail by one who knew or had notice at the time of its contents, the offense is complete, although the defendant himself did not regard the paper as one that the statute forbade to be carried in the mails. Congress did not intend that the question as to the character of the paper should depend upon

the opinion or belief of the person who, with knowledge or notice of its contents, assumed the responsibility of putting it in the mails of the United States. The evils that Congress sought to remedy would continue and increase in volume, if the belief of the accused as to what was obscene, lewd, and lascivious was recognized as the test for determining whether the statute has been violated."

[8] The testimony offered by the government, and the instructions given by the court not being in the record, we cannot pass on any asserted lack of evidence to warrant a conviction, nor upon any alleged error in failing to give instructions requested by the defendants.    It may well be that every correct statement of the law in any of the requested instructions was covered by the instructions given.

The judgment of the District Court is affirmed.