UNITED STATES ex rel. MILWAUKEE SOCIAL DEMOCRAT PUB. CO. v.
BURLESON, Postmaster General.

(Court of Appeals of District of Columbia.  Submitted March 3, 1919.  Decided
May 5, 1919.)

No. 3164.

1. WAR ☞4—ESPIONAGE ACT—CONSTITUTIONALITY.
   Espionage Act June 15, 1917, is constitutional.

2. CONSTITUTIONAL LAW ☞318—DUE PROCESS—REVOKING MAILING PRIVI-
   LEGE.
   A hearing given a newspaper by the Third Assistant Postmaster General
   before revoking its second-class mailing privilege for violating Espionage
   Act June 15, 1917, constituted due process of law.

3. POST OFFICE ☞14—REVOKING MAILING PRIVILEGE—BLANKET ORDER FOR
   FUTURE.
   The Postmaster General's authority to make a blanket order refusing
   second-class mailing privileges in the future to a newspaper whose previous
   publications had been found to violate Espionage Act June 15, 1917, is
   doubtful.

4. MANDAMUS ☞7—DISCRETION IN GRANTING.
   Mandamus is awarded, not as a matter of right, but in the exercise of
   a sound judicial discretion, and upon equitable principles.

5. MANDAMUS ☞10—TO POSTMASTER GENERAL FOR REVOKING MAILING PRIVI-
   LEGE—ENEMY PUBLICATION.
   Where a newspaper's settled policy had branded it as an enemy pub-
   lication, the Postmaster General will not be required by mandamus to
   accord second-class mailing privileges to its future publications, although
   a different situation would arise if the newspaper should present, and the
   department refuse to receive, mailable second-class matter, as defined by
   Rev. St. § 3877.

Appeal from the Supreme Court of the District of Columbia.

Mandamus proceeding by the United States, on the relation of the
Milwaukee Social Democrat Publishing Company, against Albert S.
Burleson, Postmaster General of the United States.  From a judgment
dismissing the petition, relator appeals.  Affirmed.

Chas. Poe, of Washington, D. C., and Henry F. Cochems and Hu-
bert O. Wolfe, both of Milwaukee, Wis., for appellant.

John E. Laskey, U. S. Dist. Atty., and Henry W. Sohon, Sp. Asst.
U. S. Dist. Atty., both of Washington, D. C., and Alfred Bettman, Sp.
Asst. Atty. Gen., of Cincinnati, Ohio, for appellee.

ROBB, Associate Justice.  Appellant, plaintiff below, petitioned for a
writ of mandamus to require the Postmaster General, appellee here, to
reinstate its newspaper, the Milwaukee Leader, to the privilege of trans-
portation in the mails as second-class matter.  An answer was filed,
and appellant then interposed eight pleas.  Appellee demurred, the de-
murrer was sustained, and plaintiff declined further to plead, but
sought and received leave of court to demur to the answer.  After
hearing, the demurrer was overruled, the rule to show cause discharg-
ed, and the petition dismissed.

The Milwaukee Leader is a daily newspaper published at Milwaukee,
Wis.  (Its editor was recently convicted and sentenced for violation

of the Espionage Law [Act June 15, 1917, c. 30, 40 Stat. 217]). In September of 1917 the paper was notified by the Post Office Department that, in accordance with Act March 3, 1901, c. 852, 31 Stat. 1107, it would be accorded a hearing by the Department as to whether its second-class mail privilege should be revoked; the contention of the Department being that the publication was in conflict with the provisions of the Espionage Act of June 15, 1917 (40 Stat. 217). Appellant sent its editor to Washington, and a hearing was had before the Third Assistant Postmaster General. That official, before whom such hearings are held, reached a conclusion adverse to appellant Upon review by the Postmaster General, the decision was affirmed. The answer alleges that by the representations and complaints of loyal citizens, and from personal reading and consideration of the issues of the publication in question, from the date of the declaration of war down to the time of the hearing:

"It seemed to this respondent, in the exercise of his judgment and discretion and in obedience to the duty on him reposed, as well by the general statutes, as by the special provisions of the Espionage Law, that the provisions of the latter act were systematically and continually violated by the relator's publication."

Included in the answer are many excerpts from appellant's publication between June 16, 1917, and September 27th of that year. The appellee, in his answer, says that in his judgment these and other articles in appellant's publication evince a purpose and intent on its part—

"to willfully make or convey false reports or false statements, with intent to interfere with the operation or success of the military or naval forces of the United States, to promote the success of its enemies during the present war, and willfully cause and attempt to cause insubordination, disloyalty, mutiny, and refusal of duty in the military or naval forces of the United States, and to willfully obstruct the recruiting or enlistment service of the United States, to the injury of the service and of the United States."

[1, 2] The constitutionality of the Espionage Act has been sustained by the court of last resort. Schenck v. United States, 249 U. S. 47, 39 Sup. Ct. 247, 63 L. Ed. 470, decided in the Supreme Court of the United States March 3, 1919; Frohwerk v. United States, 249 U. S. 204, 39 Sup. Ct. 249, 63 L. Ed. 561; Debs v. United States, 249 U. S. 211, 39 Sup. Ct. 252, 63 L. Ed. 566, decided by the Supreme Court March 10, 1919. The hearing accorded appellant amounted to due process. Palmer v. McMahon, 133 U. S. 660, 10 Sup. Ct. 324, 33 L. Ed. 772; Pittsburgh, C., C. & St. L. R. Co. v. Backus, 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031; Londoner v. Denver, 210 U. S. 373, 28 Sup. Ct. 708, 52 L. Ed. 1103; Smith v. Hitchcock, 226 U. S. 53, 33 Sup. Ct. 6, 57 L. Ed. 119.

Under the provisions of the Espionage Act (title 12, §§ 1 and 2, [Comp. St. 1918, §§ 10401a, 10401b]), every newspaper or other publication, in violation of any of the provisions of the act, or containing any matter advocating or urging treason, insurrection, or forcible resistance to any law of the United States, is declared nonmailable. We shall not review the articles from appellant's publication set forth in the answer, for when they are taken as a whole, and considered in con-

nection with the circumstances under which they were printed, we think the conclusion reached by the Postmaster General as to their purpose and effect was warranted. No one can read them without becoming convinced that they were printed in a spirit of hostility to our own government and in a spirit of sympathy for the Central Powers; that, through them, appellant sought to hinder and embarrass the government in the prosecution of the war.

[3-5] There would be no question, in our view, as to the authority of the Postmaster General to refuse the privilege of the mail to many, if not all, of the issues of appellant's publication between the dates mentioned, because they fall within the inhibition of the statute. A more difficult question is presented, however, when we come to consider the right of the Postmaster General to make a blanket order refusing the second-class mail privilege to that publication in the future, which in practical effect is a refusal of mail privileges. The statute contains no express grant of such authority. This is significant, in view of the fact that Congress deemed it necessary to grant such authority in respect to "any fraudulent lottery, gift enterprise, or scheme for the distribution of money," etc. Section 3929, R. S. But if the authority of the Postmaster General in the premises be doubtful, it by no means follows that appellant is entitled to invoke this extraordinary remedy. For three months, at least, appellant's publication had been injecting subtle poison into the public mind, "with intent," as found by the Postmaster General, "to interfere with the operation or success of the military or naval forces of the United States." Mandamus, a remedial process, is awarded, not as matter of right, but in the exercise of sound judicial discretion and upon equitable principles. Duncan Town Site v. Lane, 245 U. S. 308, 38 Sup. Ct. 99, 62 L. Ed. 309; Arant v. Lane, 249 U. S. 367, 39 Sup. Ct. 293, 63 L. Ed. 650, decided by the Supreme Court on March 31, 1919. The settled policy of the appellant having been such as to brand it as a hostile or enemy publication, we are not disposed, in the circumstances of the case, to extend to it the benefits of this equitable remedy. Should it present for transportation in the mails "mailable matter of the second class" (section 3877, R. S.), and the Department should refuse to receive it, a different case would be presented. There is no showing here of such offer and refusal.

The judgment is affirmed, with costs.

Affirmed.