**BURLESON, Postmaster General, v. UNITED STATES ex rel. WORKINGMEN'S CO-OP. PUB. ASS'N.**

(Court of Appeals of District of Columbia.   Submitted May 3, 1921.   Decided June 6, 1921.)

No. 3494.

**1. Post office ⬅14—Publication held nonmailable, as encouraging insurrection.**

Where a newspaper published articles encouraging insurrection against the government and destruction of the established order of society, and expressed approval and justification of the crimes committed in the Russian revolution, the publication may be excluded from the mails, under Criminal Code, § 211, as amended by Act March 4, 1911, § 2 (Comp. St. § 10381), declaring nonmailable matter of a character tending to incite arson, murder, and assassination.

**2. Constitutional law ⬅90—Post office ⬅14—Exclusion of publication from mails, as encouraging of insurrection, is not censorship of press.**

Where a publication is nonmailable, as tending to encourage arson, murder, and assassination, the excluding of it from the mails is not a censorship of the press, but merely the refusal of the government to distribute literature tending to its destruction.

Appeal from the Supreme Court of the District of Columbia.

Suit by the United States, on the relation of the Workingmen's Cooperative Publishing Association, against Albert S. Burleson, Postmaster General of the United States, for a writ of mandamus to compel restoration of second-class mailing privileges to a publication. From a judgment granting a writ of mandamus, defendant appeals. Reversed and remanded.

John E. Laskey, Charles W. Arth, William H. Lamar, and Walter E. Kelly, all of Washington, D. C., for appellant.

Seth Shepard, of Washington, D. C., and S. John Block, of New York City, for appellee.

ROBB, Associate Justice. This appeal brings up for review a judgment in the Supreme Court of the District, granting the prayer of the petition of appellee for a writ of mandamus to require the Postmaster General to restore to second-class mail privilege the New York Call, a newspaper published by the appellee.

In November of 1917, after notice and hearing, the second-class mail privilege of the Call was revoked, upon the ground that the publication was in violation of the Espionage Act of June 15, 1917 (40 Stat. 217). On January 9, 1919, a petition for reinstatement was filed on behalf of the Call, which was denied in December following.

In United States ex rel. Milwaukee Social Democrat v. Burleson, 49 App. D. C. 26, 258 Fed. 282, this court, although sustaining the action of the Department, expressed a doubt as to the authority of the Postmaster General to make a blanket order refusing the second-class mail privilege to a publication in the future, and the trial justice doubtless was influenced in the present case by the views then expressed. The Supreme

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Court of the United States, however, on March 7, 1921, in an opinion reviewing our decision, held broadly that the Postmaster General was clothed with such authority as to future publications, so that the question for our determination here is whether there was substantial evidence before that official upon which to base his decision refusing reinstatement of the Call.

The armistice having been signed before this application was made, the circumstances differed from those existing at the time the original order was made. The Postmaster General recognized this fact, and based his decision refusing reinstatement in part upon the provisions of section 211 of the Criminal Code, as amended by the Act of March 4, 1911, 36 Stat. 1339, § 2 (Comp. St. § 10381). That section, as amended and so far as applicable to this case, declares nonmailable "matter of a character tending to incite arson, murder or assassination." That the original order of the Postmaster General denying second-class mailing privilege to the Call was based upon substantial evidence that the publication was in violation of the Espionage Act is to us free from reasonable doubt. The various extracts from issues of the Call appearing in the record were quite as objectionable as were the issues of the Milwaukee Social Democrat involved in the case decided by the Supreme Court; and that fact, in our view, should receive consideration when we scrutinize the issues of the publication just prior to and following the application for reinstatement, for subsequent to the filing of that application the editor of the Call, in a statement to the Post Office Department, declared that—

"The Call has not changed its policy one bit since it was barred from the mails, and is not going to change."

Certainly this declaration did not indicate an intent on the part of the Call "to mend its way," as the Supreme Court held a publication must do to regain the lost privilege.

During the progress of the war the Call waged a persistent campaign to embarrass the government in its prosecution and to imbue the minds of readers of the publication with the thought that it was a class war, fought, not "for democracy, but for groups of capitalists." After the armistice, the efforts of the Call were directed toward imbuing its readers with a sense of injury and prejudice, not only against the government, but against organized society, and toward justifying to those readers the horrible nightmare of crime that had been committed in Russia, and inciting and encouraging like crimes in the United States. We here reproduce a few typical extracts from matter appearing in issues of the publication subsequent to the original order:

"Labor Day will never be fitly celebrated until the workers have taken possession of the world. * *. * They can do this whenever they choose."

"We are class-conscious revolutionists."

"In the United States the symptoms of a rebellious spirit in the ranks of the working masses are rapidly multiplying."

A reference in the same issue to "promising indications of a definite tendency on the part of American labor to break away from its reactionary and futile leadership and to join in the great emancipating move-

ment of the more advanced revolutionary workers of the world" was followed by this statement:

"We, the organized Socialists of America, declare our solidarity with the revolutionary workers of Russia in the support of the government of their soviets, with the Radical Socialists of Germany, Austria and Hungary in their efforts to establish working class rule in their countries, and with those Socialist organizations in England, France, Italy and other countries, who, during the war as after the war, have remained true to the principles of uncompromising international Socialism."

The article concludes:

"Long live the international Socialist revolution, the only hope of the suffering world!"

The Call also published, in extra heavy black-face type, the so-called Soviets' Bill of Rights, advocating the "arming of the laborers and peasants and disarming of the propertied classes," closing with the slogan, "Long live the Socialist world revolution."

"The war of the nations is well-nigh over; the war of the classes has well-nigh begun. Long live the revolution! Down with the Christian Brotherhood of Sham!"

" * * * Making the world safe for Socialism at the extra cost of a hundred lives was cheap at the price."

In an article addressed "To the Toiling Masses of America, France, Britain, Italy, and Japan—An Appeal of the Russian Workmen and Peasants' Soviet Government—Appeal to World's Workers," after referring to attempts to embarrass the Russian revolution and threatening "two blows for every one against the soviet," is the following:

"Long live the solidarity of the workers of the world! Long live the solidarity of the working people of America, France, England, Italy, and Japan with the Russian workers! Down with the bandits of international imperialism! Long live the international revolution!"

In another issue, containing resolutions of the Oregon delegates to the Chicago Socialistic convention, the delegates were instructed—

"to take such steps as may be found necessary to organize a revolutionary Socialistic party, whose sole aim shall be the overthrow of the capitalistic system by the establishment of the dictatorship of the proletariat."

Under "Editorial Comment" was the following:

"Oh, America; When will you, too, join the great procession? When will your workers unfurl red banners and proclaim themselves part of the free children of earth?"

In an issue containing "A Proclamation of the Newly Elected Soviet in Petrograd Addressed to the Workers, Soldiers, and Sailors in England, France, Italy, America, Sweden, Finland, Esthonia, and Serbia," is the following:

"We live under the conviction that the workers of France, England, America, Italy, and other countries will not allow their bankers and landowners to use them as the gendarmes and hangmen of the workers' revolution. * * * Arise in revolt, comrades! Put an end to the crimes of your government. * * * Long live the revolution of the workers in all lands!"

Was matter contained in these articles and others of a similar nature "of a character tending to incite arson, murder, and assassination?" [1] Taken as a whole, it is difficult to perceive what object the publication sought to accomplish, unless it was the destruction of society by any means, including "arson, murder, and assassination." The revolution in Russia had resulted in wholesale arson, murder, and assassination, the suppression of justice, the plunder of the industrious by the indolent, and the overthrow of the laws of morality which had obtained since the dawn of civilization. Over and over again in these articles sympathy was expressed with the Russian revolution, and an appeal made to the workers of all other countries to bring about the same conditions. It is one thing to advocate revolution, but quite another thing to advocate the substitution of anarchy for government, the arming of one class, and the plunder and annihilation of all others. We have in our own country a concrete illustration of the result of such revolutionary propaganda in the recent bomb outrage in New York City, resulting in the death of many innocent persons and an appalling destruction of property. When it is kept in mind that this publication constantly has sought to imbue its readers with the idea that it is their duty to overthrow the government, disregard all law, and seize for themselves the property and belongings of others, irrespective of means and regardless of consequences, we must find that there was substantial evidence before the Postmaster General justifying his refusal to accord any postal privilege to this polluted matter.

[2] As found by the Supreme Court of the United States in the Milwaukee Social Democrat Case, 255 U. S. ——, 41 Sup. Ct. 352, 65 L. Ed. ——, to which reference has been made, this does not constitute a censorship of the press, but merely evidences the unwillingness of the government to lend its aid to those who would destroy it in the dissemination of "matter of a character tending to incide arson, murder, and assassination."

It follows that the judgment must be reversed, with costs, and the cause remanded, with directions to dismiss the petition.

Reversed and remanded.