**CONSUMERS UNION OF UNITED STATES, Inc., v. WALKER, Postmaster General of the United States.**

No. 8704.

United States Court of Appeals District of Columbia.

Decided Sept. 25, 1944.

Mr. Osmond K. Fraenkel, of New York City, member of the Bar of the State of New York, pro hac vice, by special leave of Court, with whom Messrs. Horace S. Whitman, of Washington, D. C., and Abraham J. Isserman, of Newark, N. J., were on the brief, for appellant.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and Daniel B. Maher, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER, Associate Justice, and MORRIS, Associate Justice of the District Court.

MILLER, Associate Justice.

Consumers Union is a nonprofit membership corporation engaged in the business of testing and analyzing the quality of merchandise offered generally for sale, and distributing to its membership through periodical and other publications, information concerning the quality of such merchandise. Consumers Union issued a special report concerning contraceptive materials which was distributed to approximately 30,000 of its members; only, however, upon a certificate in writing, signed by each member who received a copy, as follows: "I am married and use prophylactic materials on the advice of a physician." The Postmaster at New York, acting upon instructions from the Postmaster General, banned this report from the mails. Consumers Union sought relief in the District Court, alleging that the action of the Post Office Department was arbitrary and requesting a permanent prohibitory injunction. The District Court granted appellee's motion to dismiss appellant's complaint.

The statute, upon which the Postmaster relies, reads as follows: "*Every* obscene, lewd, or lascivious, and every filthy book, pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character, and every article or thing designed, adapted, or intended for preventing conception or producing abortion, or for any indecent or immoral use; and every article, instrument, substance, drug, medicine, or thing which is advertised or described in a manner calculated to lead another to use or apply it for preventing conception or producing abortion, or for any indecent or immoral purpose; and every written or printed card, letter, circular, book, *pamphlet,* advertisement, or notice of of any kind *giving information, directly*

or *indirectly,* where, or how, or from whom, or by what means any of the hereinbefore-mentioned matters, articles, or things may be obtained or made, or where or by whom any act or operation of any kind for the procuring or producing of abortion will be done or performed, or *how or by what means conception may be prevented* or abortion produced, whether sealed or unsealed; and every letter, packet, or·package, or other mail matter containing any filthy, vile, or indecent thing, device, or substance; *and every paper, writing,* advertisement, *or representation that any article, instrument, substance, drug, medicine, or thing may, or can, be used or applied for preventing conception* or producing abortion, or for any indecent or immoral purpose; and every description calculated to induce or incite a person to so use or apply any such article, instrument, substance, drug, medicine, or thing, *is hereby declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier."* [1] [Italics supplied]

Only by taking out of context and reading, literally, those words of the· statute which, for convenience, have been italicized, can any basis be found for the Postmaster's contention. The fact that the italicized language is ·mixed, indiscriminately, with provisions concerning obscene, lewd, lascivious and filthy books, pamphlets, pictures, publications and other articles and things intended for indecent and immoral purposes, indicates that Congress. in adopting the statute, intended to legislate' upon a subject far removed from the publication involved in the present case. Cases which uphold the power of Congress to bar from the mails obscene, lewd, lascivious [2] or fraudulent [3] matter, or publications concerning lotteries,[4] or which tend to encourage arson, murder, or assassination [5] are clearly distinguishable.

The rule of law applicable in the present case was stated by the Supreme Court in United States v. Kirby,[6] where, as here, it was insisted that a statute relating to the Post Office Department must be read and applied, literally, regardless of consequences: "Indeed, it may be doubted whether it is competent for Congress to exempt the employees of the United States from arrest on criminal process from the State courts, when the crimes charged against them are not merely *mala prohibita,* but are *mala in se.* But whether legislation of that character be constitutional or not, no intention to extend such exemption should be attributed to Congress unless clearly manifested by its language. All laws should receive a sensible construction. *General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence.* It will always, therefore, be presumed that the legislature *intended exceptions to its language, which would avoid results of this character.* The reason of the law in such cases should prevail over its letter." [7]

---

[1] 18 U.S.C.A. § 334.

[2] United States v. Limehouse, 285 U.S. 424, 52 S.Ct. 412, 76 L.Ed. 843. See Swearingen v. United States, 161 U.S. 446, 16 S.Ct. 562, 40 L.Ed. 765; United States v. Chase, 135 U.S. 255, 10 S.Ct. 756, 34 L.Ed. 117.

[3] Public Clearing House v. Coyne, 194 U.S. 497, 506, 24 S.Ct. 789, 48 L.Ed. 1092. See Rebhuhn v. Cahill, D.C., 31 F.Supp. 47, 49.

[4] In re Rapier, 143 U.S. 110, 132, 12 S. Ct. 374, 36 L.Ed. 93; Horner v. United States, 143 U.S. 207, 12 S.Ct. 407, 36 L. Ed. 126; Horner v. United ·States, 143 U. S. 570, 12 S.Ct. 522, 36 L.Ed. 266.

[5] Burleson v. United States ex rel. Workingmen's Co-Op. Pub. Ass'n, 51 App.D.C. 65, 274 F. 749, error dismissed, 260 U.S. 757, 43 S.Ct. 246, 67 L.Ed. 499; Magon v. United States, 9 Cir., 248 F. 201, 160 C.C.A. 279, certiorari denied 249 ·U.S. 618, 39 S.Ct 391, 63 L.Ed. 804.

[6] 7 Wall. 482, 487, 19 L.Ed. 278. The Court also said, in support of its conclusion: "The common sense of man approves the judgment mentioned by Puffendorf, that the Bolognian law which enacted, 'that whoever drew blood in the streets should be punished with the utmost severity,' did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit. The same common sense accepts the ruling, cited by Plowden, that the statute of 1st Edward II, which ·enacts that a prisoner who breaks prison shall be guilty of felony, does not extend to a prisoner who breaks out when the prison is on fire—'for he is not to be hanged because he ,would not stay to be burnt.' And we think that a like common sense will sanction the ruling we make, that the act of Congress which punishes the obstruction or retarding of the passage of the mail, or of its carrier, does not apply .to a case of temporary detention of the mail caused by the arrest of the carrier upon an indictment for murder."

[7] Compare the following cases in which the Supreme Court avoided the question of

[Italics supplied in part]   In another case,[8] also involving the Post Office Department, in which the unconstitutionality of an Act regulating the entry of mail was asserted, the Supreme Court said: "* * * the elementary rule is that *every reasonable intendment* to avoid such a result must be indulged in."  [Italics supplied]

██   In short, while it is the duty of courts, whenever they can, to interpret statutes in such manner as to avoid doubt of constitutionality,[9] there is, also, a duty to avoid absurdity or injustice.[10]  With these considerations in mind, we are inclined to follow the interpretation which has been adopted in other circuits, namely, that Congress did not intend to exclude from the mails properly prepared information intended for properly qualified people.[11]  In our opinion, the material of the present case was prepared in the manner indicated and was proper in character within the meaning of those decisions.

A careful reading of the disputed pamphlet shows a style of treatment very similar to an article upon the same subject which appeared in the American Medical Journal,[12] and which, incidentally, passed through the mails apparently without question.  The pamphlet was written in much more conservative manner than material concerning the same subject which has appeared during recent months in Fortune Magazine [13] and in the Reader's Digest,[14] each of which, also, was permitted to circulate without question.  Apparently these publications were regarded as proper within the meaning of the statute.  In the Government's brief, it is urged by way of excuse for no action having been taken against Fortune Magazine, the Reader's Digest, or the American Medical Journal, that this was probably the result of oversight and that no benefit can be claimed in favor of the pamphlet issued by appellant merely because the Postmaster General has neglected to proceed in other cases.  This is not a persuasive argument.  The other magazines are of wide circulation; two of them with great popular appeal.  They would have been called to the attention of the Postmaster General much more quickly than would this little pamphlet issued to a select clientele by the Consumers Union.  Whether intended or not, the result of the action taken in the present case constituted a clear discrimination against appellant's pamphlet in favor of the others.

██   In view of what we have said, we conclude that a proper interpretation of the statute permits distribution of the material

---

unconstitutionality, where Acts providing for regulation of the mails were challenged:  Electric Bond & Share Co. v. Securities and Exchange Comm., 303 U.S. 419, 442, 58 S.Ct. 678, 687, 82 L.Ed. 936, 115 A.L.R. 105:  "And while Congress may not exercise its control over the mails to enforce a requirement which lies outside its constitutional province, when Congress lays down a *valid* regulation pertinent to the use of the mails, it may withdraw the privilege of that use from those who disobey."  [Italics supplied] Ex parte Jackson, 96 U.S. 727, 736, 24 L.Ed. 877:  "In excluding various articles from the mail, the object of Congress has not been to interfere with the freedom of the press, or with any other rights of the people; but to refuse its facilities for the distribution of matter deemed injurious to the public morals."  In re Rapier, 143 U.S. 110, 133, 134, 12 S.Ct. 374, 36 L.Ed. 93:  "In Ex parte Jackson, 96 U.S. 727 [24 L.Ed. 877], it was held * * * that in excluding various articles from the mails the object of Congress is not to interfere with the freedom of the press or with any other rights of the people, * * * We cannot regard the right to operate a lottery as a fundamental right infringed by the legis-

lation in question; nor are we able to see that Congress can be held, in its enactment, to have abridged the freedom of the press."

[8] Lewis Pub. Co. v. Morgan, 229 U.S. 288, 311, 33 S.Ct. 867, 874, 57 L.Ed. 1190.

[9] Buttfield v. Stranahan, 192 U.S. 470, 492, 24 S.Ct. 349, 48 L.Ed. 525; Nicol v. Ames, 173 U.S. 509, 514, 19 S.Ct. 522, 43 L.Ed. 786; United States v. Gettysburg Electric Ry., 160 U.S. 668, 680, 16 S.Ct. 427, 40 L.Ed. 576; 2 Sutherland, Statutory Construction (3d ed. 1943) § 4509.

[10] Territory of Hawaii v. Mankichi, 190 U.S. 197, 214, 23 S.Ct. 787, 47 L.Ed. 1016, and authorities there cited; Red River Broadcasting Co., Inc., v. Federal Communications Commission, 69 App.D.C. 1, 6, 98 F.2d 282, 287, certiorari denied 305 U.S. 625, 59 S.Ct. 86, 83 L.Ed. 400, and authorities there cited.

[11] United States v. Nicholas, 2 Cir., 97 F.2d 510; Davis v. United States, 6 Cir., 62 F.2d 473.  See Youngs Rubber Corp. v. C. I. Lee & Co., 2 Cir., 45 F.2d 103; United States v. One Package, 2 Cir., 86 F.2d 737.

[12] 123 J.Am.Med.Ass'n. 1043 (December 18, 1943).

[13] 17 Fortune 83 (February, 1938).

[14] 43 Reader's Digest 85 (July, 1943).

here involved for informational purposes; that it vitally concerned the lives and health of those to whom it was directed;[15] advising them, in some instances, of the dangers involved in using some of the contrivances and some of the drugs freely advertised and sold, advising them in others that the drugs and contrivances sold were not useful for the purposes described. In fact, the publication of information by the appellant in the present case, far from being designed to encourage the sale or distribution of contraceptive drugs and contrivances, was rather inclined to discourage their sale or use by indicating that most of them were either useless or dangerous.

So far as concerns the group to which the pamphlet was intended to be distributed, the record shows that it was issued by Consumers Union for the use solely of its members; upon certification in each instance that the applicant was married and used prophylactics on advice of a physician. This was certainly a fair and reasonable limitation.[16] Whether or not distribution to a larger group should be held proper there can be no question of propriety in the present case. Consequently, the case will be remanded and the trial court will proceed in conformity with this opinion.

Reversed.

[15] Thornhill v. State of Alabama, 310 U. S. 88, 102, 60 S.Ct. 736, 744, 84 L.Ed. 1093: "Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period."

[16] See Note to United States v. Limehouse in 76 L.Ed. 843, 845, 858, 859.